**LAWYERS SURETY CORPORATION, et al., Appellants,**

v.

**Richard SNELL, Successor Administrator, Appellee.**

**No. B2601.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 27, 1981.

Rehearing Denied June 17, 1981.

Don Karotkin, Funderburk & Funderburk, Houston, John E. Wright, W. R. Malone, Huntsville, for appellants.

R. Mayo Davidson, Houston, Richard S. Snell, Steven B. Harris, Childs, Fortenbach, Beck & Guyton, Houston, for appellee.

Before COULSON, MILLER, and MURPHY, JJ.

MILLER, Justice.

This is a suit by the successor administrator of a decedent's estate against the former temporary administratrix of the estate and the surety on her bond to recover money damages sustained by the estate due to the alleged negligence of the former temporary administratrix in failing to obtain fire insurance on certain improvements to real property owned by the estate.

Trial was to the court, sitting without a jury. Lawyers Surety Corporation, surety on Lilla Paulus' bond, and Lilla Paulus, the former temporary administratrix, appeal from a judgment in favor of the successor administrator, Snell. We reverse.

Claude N. Paulus owned four houses in Galveston, Texas, located at the corner of 27th and Avenue E. These houses were totally destroyed by fire in May of 1975. Mr. Paulus died in 1971 and Lilla Paulus, his wife, was appointed temporary administratrix of his estate. She was acting in this capacity at the time of the fire.

The houses that were destroyed by the fire had not been protected by fire insurance for some ten years prior to Mr. Paulus' death. After his death, Lilla Paulus did not, as temporary administratrix, seek to insure the property for fire, and therefore the estate suffered an uninsured loss when the buildings burned.

The successor administrator who replaced Lilla Paulus after she was convicted in an unrelated criminal case and sentenced to a term of years in the Department of Corrections, brought suit for money damages suffered by the estate as a result of the uninsured loss. The suit alleged that Lilla Paulus did not properly preserve and manage

the four houses in question in that she did not insure them against fire, theft, and other hazards. From an adverse judgment Lawyers Surety Corporation and Lilla Paulus appeal, alleging twenty and twenty-three points of error respectively.

Points of error one, two, and three, and eleven, twelve, and thirteen asserted by both appellants are identical and control the disposition of the case. In these points of error the appellants argue the trial court erred in concluding Lilla Paulus breached her fiduciary duty and was negligent in preserving and protecting the assets of the estate since it was impossible to obtain fire insurance on the houses in question. We find that there is no evidence to support the trial court's rendition in conclusion of law number two that the failure of Lilla Paulus to insure the improvements on the subject premises was a breach of her fiduciary obligation and was negligence. We further hold it was proven as a matter of law that it was impossible to obtain fire insurance on the properties in question.

█ The general rule is that a temporary administrator, having qualified, is charged with the duty of reasonable care to preserve the assets of the estate. *Frost National Bank of San Antonio v. Kayton*, 526 S.W.2d 654 (Tex.Civ.App-San Antonio 1975, writ ref'd n.r.e.). The Probate Code provides that an executor or administrator shall take care of the property of the estate of his testator or intestate as a prudent man would take care of his own property. Tex.Prob.Code Ann. § 230(a) (Vernon 1980). The standard used in reviewing an administrator's conduct regarding the procuring of insurance is one of negligence. The administrator is not an insurer and is obliged to use only reasonable care in preventing the loss or deterioration of property. 18 M. Woodward & E. Smith, III, Probate and Decedents' Estates § 693 (Texas Practice 1971).

█ It is clear that the elements of actionable negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately resulting from such breach. Each of the elements must coexist in order for there to be any recovery. *Rodriquez v. Carson*, 519 S.W.2d 214, 216 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.).

From our reading of the record, it was clearly established that no duty existed on the part of Lilla Paulus to obtain insurance on the subject premises because it was impossible, considering the reputation of the area where the buildings were located, for insurance to be obtained. The only witness produced at the hearing who gave any testimony regarding whether the properties in question could be insured was Thad C. McCormick. Mr. McCormick testified that he was familiar with the buildings which burned and with the general area surrounding them. He further testified he had been writing insurance for thirteen years and that during this entire time he had an office near the immediate area of the subject houses.

During the hearing, a portion of Mr. McCormick's previously given deposition was referred to and read into the record. As to whether the properties in question could have been insured against the peril of fire at the time the fire took place, this exchange in the record is relevant:

Q: And I will ask you to read written question number ten, [from the deposition] and then read your answer to it, sir.

A: The question number ten asked me could the property in question have been insured against fire and other casualties during the period of time beginning in '71 and ending in May, 1975, when the property was destroyed by fire.

Q: And what was your answer to that?

A: I said the property could not be insured against the perils of fire.

Q: Would you just read what you said?

A: In my opinion, the property in question could not have been insured against the perils of fire. However, in June of 1971, windstorm coverage could have been secured on this property due to the advent of the Texas

Catastrophe Insurance written strictly for windstorm and hail coverage in areas where this coverage cannot be readily secured. . . .

Q: What occupancy was it [the subject premises] in at the time of the fire?

A: At the time of the fire, it was common knowledge that that area and these premises were houses of prostitution. . . .

Q: And would you read written question number eleven in your deposition, sir, and then tell what your answer to it was?

A: If the property in question could have been insured against fire . . . , please state the approximate annual insurance premium that would have been necessary to insure the property for its full value.

The answer: Would not be applicable because, in my opinion, the property was uninsurable from the fire standpoint. . . .

Q: I see, sir. And read written question number fourteen, if you would be good enough to do so, sir.

A: Do you know to what use the the property in question was being put during the period of time between 1971 and May of 1975.

Answer: The property in question is located in what in Galveston is referred to as the Jungle. It was common knowledge that the property is occupied by prostitutes and that the rooming houses or rooms were rented to them.

Q: Read written question number fifteen and your answer to it.

A: . . . Please describe any effect that the use to which the property in question was being put would have on the availability of insurance coverage.

Answer: Due to the moral hazards involved with the property in question, it definitely would have an effect on the availability of insurance. As I have stated before, coverage is—fire coverage can be obtained in surplus line markets on certain types of risks. However, due to the moral hazard in question in this particular risk, I feel that fire insurance would have been unobtainable at any price.

Q: Is that still your opinion?

A: Yes, sir, it is.

■ In our opinion, this testimony conclusively establishes that no insurance could have been acquired for the subject premises during the time Lilla Paulus was temporary administratrix of the estate of her husband. No other insurance agent testified to the contrary and no witness was called to dispute the reputation of the area in which the houses were located.

■ Because of the impossibility of obtaining fire insurance on the property there was of course no duty on Lilla Paulus to do so. One does not have a duty to do the impossible. It follows, therefore, that without a duty on Lilla Paulus' part to obtain fire insurance, she cannot be held negligent for failing to obtain such insurance. Another factor in finding Lilla Paulus not negligent is that her husband, who took care of the properties while he was alive, chose not to insure them for the ten year period prior to his death. This fact, while not controlling, is some evidence of the care which a reasonable, prudent man would take as to these properties. We therefore hold there is no evidence to sustain the trial court's conclusion that Lilla Paulus was negligent in caring for the properties in question.

We need not discuss the numerous other points of error brought forward by the appellants as the disposition of the discussed points are determinative of the case.

Judgment reversed and rendered that the appellee Richard Snell take nothing from Lawyers Surety Corporation and/or Lilla Paulus.