The **COBLE WALL TRUST COMPANY, INC. & Elwood Cluck, Appellants,**

v.

**William PALMER, as Independent Administrator, et al., Appellees.**

**No. 04–90–00063–CV.**

Court of Appeals of Texas, San Antonio.

Oct. 31, 1991.

Barry A. McClenahan, Pape, Murray, McClenahan & Sparr, Inc., San Antonio, for appellants.

Thomas C. Hall, Law Office of Tom Hall, P.C., San Antonio, for appellees.

Before BUTTS, CARR and GARCIA, JJ.

## OPINION

BUTTS, Justice.

Coble Wall Trust Company, Inc. (Coble Wall) and Elwood Cluck appeal from a judgment after a jury verdict in favor of plaintiff, William Palmer, independent administrator of the estate of Booney Moore and independent administrator of the estate of Marie M. Davis, and plaintiffs, Robert E. Dardeman and Helen Marie Garner, nephew and niece of Moore.

On April 12, 1985, the statutory probate court appointed Coble Wall guardian of the estate of Booney M. Moore (Moore), an elderly incompetent person. In November, Cluck, an attorney and president, as well as sole stockholder, of Coble Wall, filed an Application For Order Authorizing The Establishment Of An Estate Plan. The application recited that Moore was ninety-three years old, in poor health, with a life expectancy of less than thirty days. Marie M. Davis, Moore's sister (since deceased) was

listed as the only heir at law. Robert E. Dardeman, Sr. and Helen Marie Garner, were listed as expectant devisees.

The application also set out the assets of Moore's estate, listing $387,454 cash and personal property valued at $19,400. The application further estimated the value of approximately 187 acres off Bandera Road at *$5,332,950* and two lots located in Guadalupe County at $8,000. It recited that Coble Wall had employed appraisers to appraise the noted acreage, and that figure would be substituted at the hearing to approve the estate plan. The application projected that the total estate tax liability upon Moore's death would amount to approximately *$2,712,167*.

The estate plan was approved by order of the probate court on November 22. The order substituted the figure of *$9,000,000* as the appraised value of the real property and the figure of *$4,503,700* as estimated estate taxes. In addition to certain cash gifts to be made in discharge of the bequests in Moore's will, Davis, Dardeman, and Garner were each to receive $10,000 cash.

The plan further provided for Coble Wall to organize a corporation, Estate of Booney M. Moore, Inc., which would acquire by conveyance all the real property owned by Moore in exchange for 10,000 shares of preferred stock having a par value of $10 per share, 1,000 shares of no par common stock, and $2,500,000 general mortgage bonds issued by the corporation for sale to the general public to be secured by a deed of trust on the Bexar County property. The 10,000 shares of preferred stock were to be placed in the Booney M. Moore Trust. The plan also provided that 1,000 shares of the common stock would be offered for sale to the heirs first, and then to the general public.

The plan further provided for the following remunerations to be paid Coble Wall: a fee of $75,000 or ten percent of the reduction in federal taxes; one and one half percent of the amount of a letter of credit to be obtained; five percent of the net proceeds from the sale of the mortgage bonds; five percent of the gross sales price of the real estate when sold; and five percent of the gross sales price of the common stock when sold.

The purpose of the plan was to provide a cash flow for the estate as well as to reduce the substantial estate and inheritance taxes. Present in court with their attorneys, who had advised them concerning the estate plan, were Davis, Dardeman, and Garner. The estate plan was approved by the probate court pursuant to sections 230(b)(2)(A) of the Probate Code. Each of the plaintiffs expressly agreed to the estate plan before the probate court approved it on November 22, 1985.

Instead of selling the bonds to the public, as called for in the initial order, the guardian was authorized to sell the mortgage bonds to SASA for $2,400,000.00 cash by subsequent order of the court. Thus both the purchaser and the price were determined in advance as part of the order approving the estate plan. In the final account of the guardian, the entire transaction concerning the mortgage bonds and lien on the property were set out. The probate court approved the account for final settlement on April 9, 1986. In *San Antonio Sav. Ass'n. v. Palmer*, 780 S.W.2d 803, 809 (Tex.App.—San Antonio 1989, writ denied) this court held that

> "the order of the probate court approving the guardian's final account constitutes a de facto confirmation of the transfer of the Bandera Road property by the guardian to the corporation. The transfer of the Bandera Road property, the execution by the corporation of the deed of trust to secure the payment of the general mortgage bonds, and the sale of the bonds to SASA are valid under the provisions of the Code."

Moore died on December 12, 1985. Coble Wall was appointed temporary administrator of the estate. One of the specific powers given to the temporary administrator in the probate court's order was the power to complete the estate plan previously approved by the probate court in the guardianship proceeding. The probate court authorized the sale of the mortgage bonds to

SASA by its order entered December 26, 1985.

Coble Wall (with Cluck) served until removed in March 1986. William Palmer was thereafter appointed independent administrator.

On November 25, 1987, Palmer, as independent administrator, filed suit against Coble Wall and Elwood Cluck, joining Davis, Dardeman, and Garner as plaintiffs. A few days later the previously mentioned suit against San Antonio Savings Association was also instituted.[1] That case was tried first. The suit against San Antonio Savings Association sought unsuccessfully to set aside the foreclosure on the property and restore title in the estate. That opinion sets out fully the probate proceedings regarding the estate plan.

San Antonio Savings Association purchased the mortgage bonds for $2,400,000, taking a lien upon the acreage. The money was placed in escrow to pay the estate taxes. Eventually the present administrator, Palmer, paid the estate taxes, the sum being under $1,800,000. The evidence shows that the remaining proceeds were disbursed.

The evidence further shows that the plaintiffs sold the acreage to a corporation (River Center International) in 1986, but the purchaser defaulted on payments and the plaintiffs took back the land in 1987. After that time, San Antonio Savings Association foreclosed on the acreage because the corporation defaulted. At the time of the sale to River Center, its default, and the subsequent foreclosure on the acreage by SASA, Coble Wall was no longer administering the estate.

In addition the evidence shows that on September 6, 1986, Cluck, representing Coble Wall, appeared in probate court for approval of the final accounting of that temporary administrator. Present in court were these same plaintiffs. After hearing objections to the final accounting, the probate court approved the final accounting and discharged Coble Wall.

### The Trial

Trial began in the present case in September 1989. Although alleging several causes of action, plaintiffs went to trial on alleged violations of the deceptive trade practices act (DTPA), TEX.BUS. & COM. CODE ANN. §§ 17.41 et seq. (Vernon 1987 and Supp.1991). They based the cause on breach of fiduciary duty, negligence, and unconscionable action. The plaintiffs contended that the estate plan devised by Cluck was ineffective in accomplishing its stated purpose of reducing taxes, was exorbitant and needlessly complex, and resulted in the estate paying useless and excessive fees. The jury found in favor of the plaintiffs, assessing actual and punitive damages pursuant to the DTPA and additional punitive damages based on "gross negligence."

### Points of Error

Coble Wall and Cluck present fifty-four points of error, summarized in eleven groups, alleging that the probate court erred in: setting the trial without proper notice (1–4); overruling appellants' motion for continuance (5–6); refusing to consider appellant's special exceptions and ordering them to proceed to trial without a ruling (7–20); refusing to consider, act upon, and sustain appellants plea of res judicata (21–23); denying appellants' trial amendment of the affirmative defense of time bar by limitations (24); refusing to submit requested jury instructions and definitions of the standard of care imposed upon Coble Wall by the Probate Code (25–31); submitting questions regarding Cluck's duty to the plaintiffs because there is no evidence that he owed any duty to them or was in privity of contract with them (32–36); submitting questions whether Cluck breached a fiduciary duty owed to the plaintiffs, was negligent, and whether the plaintiffs incurred damages therefrom, because there was no evidence to support the issues and the cause of action was barred by the stat-

---

1. *San Antonio Savings Ass'n. v. Palmer,* 780 S.W.2d 803 (Tex.App.—San Antonio 1989, writ denied). This case was first filed in district court which ordered its transfer to the probate court in which the probate proceedings involving the real estate were then pending.

ute of limitations and the doctrine of res judicata (38–49); submitting questions on a DTPA cause of action which would not apply to guardians and administrators and, further, because the plaintiffs failed to prove that they were consumers or engaged in trade or commerce as defined in the Act (50–51); and in submitting questions whether Cluck misrepresented the characteristics of the estate plan, acted unconscionably, and engaged in actions that were a producing cause of such damages because there was no evidence to support such issues, and the evidence regarding damages was insufficient.

Point of error thirty-seven is that the acts of Coble Wall were authorized, approved, and ordered by the probate court, and that plaintiffs failed to establish that Coble Wall breached a duty which resulted in damages to plaintiffs. Points fifty-two, fifty-three, and fifty-four challenge the evidence as insufficient legally and factually to support the findings that Cluck represented the estate plan had characteristics or benefits which it did not, that he engaged in unconscionable conduct, and that such actions were the producing cause of damages (DTPA questions).

### Jurisdiction of the Probate Court

TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp.1991), specifically the portion in effect at the time this action was brought, provides:

> In proceedings in the statutory probate courts and district courts, the phrases "appertaining to estates" and "incident to an estate" in this Code include the probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for administration of testamentary trusts and the applying of constructive trusts, and generally all matters relating to the settlement, partition, and distribution of estates of wards and deceased persons. All statutory probate courts may, in the exercise of their jurisdiction, notwithstanding any other provisions of this Code, hear all suits, actions, and applications filed against or on behalf of any guardianship, heirship proceeding, or decedent's estate, including estates administered by an independent administrator.... In situations where the jurisdiction of a statutory probate court is concurrent with that of a district court, any cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court rather than in the district court.

TEX.PROB.CODE ANN. § 5A(b). In 1985 this amendment was added:

> In actions by or against a personal representative, the statutory probate courts have concurrent jurisdiction with the district court.

Amended by Acts 1985, 69th Leg., ch. 875 § 1, eff. Aug. 26, 1985. The legislature denominated this last addition a *remedial* act which applied to all probate actions filed after January 1, 1973. We are not concerned here with a 1987 amendment because it does not affect the present case. Although there were amendments effective Sept. 1, 1989 which state that "[a] statutory probate court may exercise pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy", and that "[s]ubsections (c) and (d) apply whether or not the matter is appertaining to or incident to an estate," the 1989 amendments do not apply in the present case. This is because the Act expressly provides that these sections will apply only to a cause of action that accrues on or after the effective date. It states that a cause of action accruing before September 1, 1989, is governed by the law in effect at the time the cause of action accrued, and the former law is continued in effect for that purpose.

The cause of action alleged in the present case accrued before that date since suit was filed in September 1987. Therefore, we will be governed by the law in effect at that time.

*Qwest Microwave, Inc. v. Bedard*, 756 S.W.2d 426 (Tex.App.—Dallas 1988, no writ), was governed by the law in effect

before the 1989 amendment to section 5, *supra.* The *Qwest* court discussed the effect of the decision in *Seay v. Hall*, 677 S.W.2d 19 (Tex.1984), which determined that the Texas Probate Code was not broad enough to confer jurisdiction upon probate courts of a personal injury action brought as a survival action by a decedent's estate. *Seay*, 677 S.W.2d at 21–25. In *Seay* the supreme court stated, at page 23, that the "appertaining to an estate and incident to an estate" phrases were designed to limit probate court jurisdiction to matters in which the *controlling issue* was the settlement, partition, or distribution of an estate. It concluded that neither wrongful death nor survival actions are, or were intended to be, matters appertaining to or incident to an estate. Further the court determined that the language "claims by or against an estate" could not be construed to include survival or wrongful death actions in the definition of "claims," found in the probate code at section 3. *See Wolford v. Wolford*, 590 S.W.2d 769, 771 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). The *Qwest* court followed *Seay*.

The supreme court, after a detailed review of the legislative history of this area of probate law, including amendments through 1979, expressly approved interpretations that allow a probate court to exercise jurisdiction only if the controlling issue of the case is the settlement, partition, or distribution of an estate. *Seay v. Hall*, 677 S.W.2d at 24.

■ The holding of *Seay* that a survival claim is not incident to an estate under § 5A(b) of the Probate Code was affirmed in *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634 (Tex.1986). The district court is still the proper forum for survival actions under the 1985 amendment. *Id.* n. 1. Thus, the probate court has power to hear all matters incident to an estate only in those instances where a probate proceeding, such as in the administration of an estate, is actually pending in the court in which the suit is filed, relating to a matter incident to that estate. *Interfirst Bank–Houston v. Quintana Petroleum Corp.*,

699 S.W.2d 864, 873 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In *Cowgill v. White*, 543 S.W.2d 437, 439 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) the court held that an interpleader action to determine right of possession to certain property in an estate was incident to the settlement, partition and distribution of the estate in the probate court and was not a suit in which the district court had concurrent jurisdiction. It was not a cause that fell within the general jurisdiction of the district court. Under the same reasoning and procedure, the suit by these same plaintiffs against SASA to set aside the foreclosure on the land which comprised the bulk of the estate of Booney Moore and return title to the estate was properly transferred from the district court to the probate court where probate proceedings of the estate were then pending. This was because the action was incident to the ultimate settlement, partition and distribution of the estate.

■ An action is "incident to an estate" when the outcome will have a direct bearing on the assimilation, collection, and distribution of the decedent's estate. *See English v. Cobb*, 593 S.W.2d 674, 676 (Tex. 1979). *See also Lucik v. Taylor*, 596 S.W.2d 514 (Tex.1980) (injunction against beneficiary regarding estate property is within statutory probate court jurisdiction). The statutory probate court has jurisdiction to enter an injunction to prevent a lienholder from foreclosing on property securing a promissory note, when the property could be assets of an estate. *Pullen v. Swanson*, 667 S.W.2d 359, 362–63 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). We further agree with the rationale of *Farah v. Fashing*, 666 S.W.2d 341, 342 (Tex.App.—El Paso 1984) (orig. proc.):

[While] [S]ection 5(d) does confer ancillary jurisdiction upon county probate courts to adjudicate matters "incident to an estate", Section 5A of the Code more fully defines the phrases "appertaining to estates" and "incident to an estate". These statutes have increased the jurisdiction of the county courts so that they can more fully and quickly settle a dece-

dent's estate in one proceeding. *English v. Cobb,* 593 S.W.2d 674 (Tex.1979). To fall within Section 5 ancillary jurisdiction, the outcome of the additional controversy must be "necessary" to the resolution of the particular estate. *Lucik v. Taylor,* 596 S.W.2d 514 (Tex.1980).

While the estate in the present case may still be "pending" in the sense that it has not been formally closed by court action, the primary assets of the estate are depleted, *supra* fn. 1, and the estate is no longer an active pending estate. We hold the present action is not a suit appertaining to or incident to the estate of Booney Moore. In this regard, the DTPA allegations involved acts, misdeeds, and misrepresentations which predate the death of Booney Moore, as well as those after. The relief sought is pursuant to the remedial DTPA, with punitive damages, and was brought for the benefit of the beneficiaries and the administrator. The recovery was based on what the jury believed the beneficiaries and present administrator would have received had the estate plan not been implemented. It is not a suit to determine the assets of the estate. The outcome of this additional controversy was not necessary to the resolution of the estate. Further, there were no assets of the estate for the probate court to protect through ancillary jurisdiction. This was a remedial action, seeking penalty damages.

■ We hold the probate court had no jurisdiction of the subject matter of adjudication in this case. The proper forum for the DTPA action was the district court. A judgment of a court having no jurisdiction of the subject matter of adjudication is void. *Gutierrez v. Estate of Gutierrez,* 786 S.W.2d 112, 113 (Tex.App.—San Antonio 1990, no writ). The probate court lacked jurisdiction to render this judgment.

## Trial Complaints

■ Appellant (Coble Wall and Cluck) brings several complaints regarding the trial, such as inadequate notice of the trial setting. If the probate court had jurisdiction of the case, these points on appeal would be overruled. The case was called

and then reset for a few days later. It is appellant's contention that the settings violated TEX.R.CIV.P. 245, and constituted an abuse of discretion and denial of due process because Coble Wall was unable to complete pretrial discovery by deposing witnesses. *See Trevino v. Gonzalez,* 749 S.W.2d 221, 223 (Tex.App.—San Antonio 1988, writ denied) (discussion of the notice requirement). The record discloses, and Cluck admitted to the trial court when the case was called on September 15, that he was aware of the setting. *Cf. Wilson v. Industrial Leasing Corp.,* 689 S.W.2d 496, 498 (Tex.App.—Houston [1st Dist.] 1985, no writ).

The trial court continued the case until September 20 for purpose of deposition taking. Although the motion for continuance did not assert that appellant did not have notice of the trial setting and needed additional time to depose witnesses, the trial court had the discretion to continue the case *sua sponte. See Dell Development Corp. v. Best Industrial Uniform Supply Co.,* 743 S.W.2d 302, 303 (Tex.App.—Houston [14th Dist.] 1987, writ denied). No abuse of discretion could have been shown.

## Death of Marie M. Davis

■ Marie M. Davis, plaintiff, died in February 1989, while the suit was pending. Appellant filed two motions for continuance alleging that the proceedings should be abated and Scire Facias issue until a personal representative of Davis' estate was appointed. *See* TEX.R.CIV.P. 151.

Counsel for plaintiffs informed the court that an administrator for Davis' estate was to be appointed on September 20. On that date counsel for plaintiffs announced his appearance on behalf of the Independent Administrator of the estate. The Court then permitted amendment of the pleadings, which reflect that the suit proceeded in the name of Palmer as the administrator of Davis' estate. *See* Rule 151. The trial court did not abuse its discretion in denying the motions for continuance. If it were assumed the probate court had jurisdiction of the subject matter, points four and five would be overruled.

### Special Exceptions

■ Points seven through twenty are that "[t]he probate court erred in refusing to consider and determine and in failing to sustain defendant's special exceptions and in ordering defendants to proceed to trial without a ruling.

The following transpired at the hearing on September 20:

MR. CLUCK: Your Honor, at this point I would like to offer for consideration of the Court certified copies which have been marked first as Defendant's Exhibit 1, which is a certified copy of the Application for an order establishing estate plan ... and includes the certified copy of the order authorizing the establishment of the estate plan. ...

Second exhibit I would like to offer to the Court is Defendant's Exhibit Number 2, which is a certified copy of the order of this Court dated April 9, 1986, which approves the accounting of the guardian, the Coble Wall Trust Company ...

And the third exhibit which I would offer to the Court is Defendant's Exhibit Number 3, which is a copy of the Final Account of the Temporary Administrator and Application to Close Temporary Administration ...

And I would like to make a motion to the Court at this time to consider this as evidence. I'm offering to the Court as evidence of the identity of the parties in those previous proceedings and in this current proceeding the identity of the causes of action which were raised in the prior proceedings with the identity of the causes of action which are raised here. ...

I'd like to renew my plea of res judicata and right of estoppel and request the Court to move the Court to dismiss this proceeding on the grounds that it is barred, that these prior orders of this Court constitute an absolute bar from further proceedings here on the grounds—

. . . . .

THE COURT: I'm not going to rule on their admissibility before the jury at this time.

MR. HALL: In that case, I have no objection, Your Honor, and I think I want all these same documents into the case in chief as well.

THE COURT: Be received into the record.

. . . . .

THE COURT: Motion is overruled and denied.

It is clear that the defendant was presenting evidence to obtain a ruling on the plea of res judicata. Nowhere during the foregoing does the defendant urge to the trial court the special exceptions contained in Paragraphs I through XIV of the first amended answer. Special exceptions to pleadings that are not called to the attention of the trial court and on which the record does not show the trial court acted are waived. *Kilpatrick v. State Board of Registration*, 610 S.W.2d 867, 871 (Tex.Civ. App.—1980, writ ref'd n.r.e.); *Rio Grande Valley Sugar Growers v. Campesi*, 580 S.W.2d 850, 862 (Tex.Civ.App.—Corpus Christi), *rev'd on other grounds*, 592 S.W.2d 340 (Tex.1979). Consequently, the record does not reflect that the probate court ordered the defendants to proceed to trial without a ruling upon the special exceptions. No abuse of discretion could have been shown.

### Res Judicate and Collateral Estoppel

In points of error twenty-one, twenty-two, and twenty-three, Cluck asserts that the probate court erroneously refused the plea of res judicata and collateral estoppel based upon the court orders establishing the estate plan and approving the final accountings of Coble Wall as guardian of Moore and as temporary administrator of Moore's estate.

■ The related doctrines of res judicata and collateral estoppel are discussed in *Puga v. Donna Fruit Co., Inc.*, 634 S.W.2d 677 (Tex.1982) and *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex.1984). The court in *Puga* stated:

The doctrine of res judicata deals generally with the conclusive effects of judgments, encompassing the separate doc-

trines of merger, bar and collateral estoppel. It may be asserted to preclude relitigation of a claim, when a subsequent suit is brought upon the same cause of action, or to preclude relitigation of an issue or issues common to separate causes. (citations omitted). The distinction between the doctrine of res judicata as a plea of bar (claim preclusion), and as a plea of collateral estoppel (issue preclusion) is important in determining the breadth of the estoppel worked by a prior judgment. (citation omitted).

*Puga,* 634 S.W.2d at 679. The *Bonniwell* court further explained:

"Res judicata ... bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit. (citation omitted). When a prior judgment is offered in a subsequent suit in which there is identity of parties, issues and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment".

*Bonniwell,* 663 S.W.2d at 818. *See also Wright v. Wright,* 710 S.W.2d 162, 164 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (listing the five elements of res judicata: identity of parties, issues, subject matter, relief sought, and causes of action). The judgment in the earlier lawsuit precludes a second suit by the parties not only to matters actually litigated, but also on causes of action arising out of the same subject matter which might have been litigated in the first suit. *Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771–772 (Tex.1979).

■ Collateral estoppel is narrower than res judicata. *Bonniwell,* 663 S.W.2d at 818. Collateral estoppel bars relitigation, in a subsequent suit involving a different cause of action, of issues actually litigated and essential to the prior judgment. *Puga,* 634 S.W.2d at 680. It precludes relitigation of any *ultimate issue* of fact litigated in the prior suit. *Bonniwell,* 663 S.W.2d at 818. "Ultimate issue"

means those factual determinations considered by the trier of fact that were necessary to form the basis of the judgment. *Tarter v. Metropolitan Sav. and Loan Ass'n,* 744 S.W.2d 926, 928 (Tex.1988). The focus of attention centers on issues before the court in the prior suit. *See Puga,* 634 S.W.2d at 680. A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell,* 663 S.W.2d at 818; *Britt v. Cambridge Mutual Fire Ins. Co.,* 717 S.W.2d 476, 482 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). In a second action between the same parties on a demand different from that in the first action, it must clearly appear that the precise point or question in issue in the second suit was involved and decided in the first. *See Houston Terminal Land Co. v. Westergreen,* 119 Tex. 204, 27 S.W.2d 526, 528 (1930)

■ It is undisputed that the parties in the probate court proceedings are also the parties involved in the instant suit. However, appellant does not demonstrate which issues in the present litigation were adjudicated, or could have been adjudicated, in the probate court proceedings, including the *SASA* suit. It is incumbent upon the one claiming identity of issues to prove the issue in controversy was actually litigated in the former proceeding. *Twin City Fire Ins. Co. v. Foster,* 537 S.W.2d 760, 763 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.).

■ Appellant contends that the plaintiffs' consent to the court's order approving and establishing the estate plan bars them from subsequently pursuing a claim against Coble Wall and Cluck arising from the implementation of the plan. We believe the order approving the estate plan would not preclude a cause of action which arose upon discovery of harm or injury, although the alleged harm or injury might not have occurred but for implementation of the estate plan. The DTPA action was

premised upon alleged failure of the estate plan to result in a tax savings, one of its purposes, and it was asserted that Coble Wall was therefore negligent in its duties as guardian and temporary administrator. As to whether or not these claims rise to the level of a *DTPA* cause of action, we express no opinion.[2]

The orders approving the final accountings each decreed, using similar language, that Coble Wall was discharged from its trust and "from further liability". However, this language would not relieve an administrator from individual liability for mismanaging an estate. *See Interfirst Bank–Houston v. Quintana Petroleum,* 699 S.W.2d 864, 874 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Thus, a subsequent suit is not always precluded if appropriate circumstances give rise to one.

It is argued that the decision of *San Antonio Sav. Ass'n v. Palmer, supra,* constitutes a bar. As previously noted, the issue there was whether a transfer of property pursuant to the estate plan was void. Further, Coble Wall and Cluck were not involved in the SASA suit and identity of parties is lacking. If jurisdiction existed, the points would be overruled.

### Statute of Limitations

Appellant asserts in point twenty-four that the DTPA cause of action accrued more than two years prior to the commencement of this suit and is, therefore, barred by the two year statute of limitations under TEX.CIV.PRAC. & REM. CODE § 16.003 (Vernon 1986) and the TEX.BUS. & COM.CODE § 17.56A (DTPA). Appellant did not plead the affirmative defense of statute of limitations before trial, TEX.R.CIV.P. 94, but sought to amend the defendants' pleadings during trial. It is contended the trial court erroneously denied the motion to file a trial amendment.

■ Parties may amend their pleadings within seven days of the date of trial or thereafter upon leave of court. Leave shall be granted unless there is a showing that the amendment will operate as a surprise to the opposite party. TEX.R.CIV.P. 63. There are two situations in which the trial court has the discretion to refuse an amendment: 1) the opposing party presents evidence of surprise or prejudice; or 2) *the amendment asserts a new cause of action or defense,* and thus is prejudicial on its face, and the opposing party objects to the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990). Appellant's motion for trial amendment asserted a new defense: statute of limitations. The record reflects that the trial court denied the plaintiffs' motion to amend their pleadings to include a claim of fraud. The attorneys argued whether the limitations amendment should be allowed. The judge also denied that amendment.

Although there is confusion as to when the alleged DTPA cause of action, if any, accrued, the date the estate plan was approved was November 22, 1985. This cause of action was filed on November 25, 1987. Coble Wall was not replaced as administrator until March 1986. Since the plaintiffs approved the plan at first, we can conclude no dispute or ground for filing suit arose at that time. Further, since the probate court also granted permission, without objection, for the plan to be continued into the administration by Coble Wall in December, 1985, it can be concluded there was no dissension then. Therefore, even if the court erred in denying permission to amend at trial, no harm could be shown.

■ The trial court had the discretion to grant or deny the motion. When an amendment which introduces new substantive matter has been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party. *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). On appeal, the trial court's ruling will not be disturbed unless the complaining party clearly shows an abuse of

---

**2.** The question of collateral attack on the probate court orders authorizing implementation of the estate plan and the orders approving final accountings has not been raised. *See e.g. Romick v. Cox,* 360 S.W.2d 430 (Tex.Civ.App.—Dallas 1962, no writ).

discretion. *Id.* at 350. That has not been done.

However, this is not to say there can never be a trial involving a DTPA action when denial of such a motion would amount to abuse of discretion. The statutory time bar, § 17.565 of the Tex.Bus. & Com.Code, is a specific grant of an affirmative defense to this remedial action. It could, under the facts of another case, amount to a substantive right. The denial of the trial amendment might be shown to be an abuse of discretion in such a situation. That is not the case here.

### Duty

 Points twenty-five through thirty-one are that the trial court erred in refusing to submit appellant's requested instructions and definitions pertaining to the duty Coble Wall owed under TEX. PROB.CODE § 230 as guardian and temporary administrator of Moore's estate. Appellant requested a definition of "negligence" as being the failure to manage the estate as a prudent man would manage his own property (point 27); an instruction that the appellant owed no legal duty to the plaintiffs other than to manage the estate as a prudent man (point 28); an instruction that appellant was authorized, but not required, to apply to the court for an order authorizing the establishment of an estate plan for the purpose of minimizing taxes (point 29); an instruction that the duty imposed by probate code does not include the influences of the plaintiffs (point thirty); and an instruction that the defendant had the duty to exercise judgment and care under the then current circumstances in the locality of administration of the guardianship (point 31). The Probate Code sets out the duty of administrators and guardians:

### § 230. Care of Property of Estates

**(a) Estates of Decedents.** The ... administrator shall take care of the property of the estate of his testator as a prudent man would take of his own property ...

**(b) Estates of Wards.**

**(1) General Powers and Duties.** The guardian of the estate of a ward is entitled to the possession and management of all properties belonging to the ward ...; but, in the management of the estate, the guardian shall be governed by the provisions of this Code. It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property ...

**(2) Power to Make Tax–Motivated Gifts.** (A) on application of the guardian ..., the court may, after hearing and by order, authorize the guardian to apply such principal or income of the ward's estate ... towards the establishment of an estate plan for the purpose of minimizing income, estate, inheritance, or other taxes payable out of the ward's estate. The court may authorize the guardian to make gifts of the ward's personal property or real estate to ... (ii) the ward's heirs at law ..., (iii) devisees under the ward's last validly executed will ..., (iv) and a person serving as guardian of the ward provided he is eligible under either category (ii) or (iii) above.

. . . .

TEX.PROB.CODE ANN. § 230 (Vernon 1980). Coble Wall, as administrator of the estate, was held to the same fiduciary standards in the administration of the estate as a trustee. *See Humane Society v. Austin National Bank,* 531 S.W.2d 574, 577 (Tex. 1975). A temporary administrator must exercise reasonable care in preserving the assets of the estate. *Lawyers Surety Corp. v. Snell,* 617 S.W.2d 750, 752 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ); *Frost National Bank of San Antonio v. Kayton,* 526 S.W.2d 654 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.). The powers and obligations of a guardian are also similar to those of a trustee. *Neblett v. Valentino,* 127 Tex. 279, 92 S.W.2d 432, 434 (1936). The administrator held the estate funds in trust for the beneficiaries, and in dealings with the funds, was required to act in good faith, without regard to personal interest and opportunities for gain resulting from the fiduciary relation-

ship. *See Humane Society* at 580. (citing (230(a)).

The probate court defined fiduciary duty and submitted a question whether Coble Wall or Cluck breached the fiduciary duty owed to each of the plaintiffs. The probate court was not required to instruct the jury on the definition of "prudent". Moreover, the court submitted a definition of negligence as applied to defendant Coble–Wall substantially similar to the one appellant submitted. In this regard, the court also did not err in refusing to submit appellant's requested instruction that Coble Wall owed no legal duty to Davis, Garner, and Dardeman, other than to manage the estate as a prudent man. The court used the "prudent man" language in its definition of negligence, without referring to it as being the "legal duty" owed to the plaintiffs.

Further, refusal to submit an instruction that a guardian obtained a court order authorizing establishment of an estate plan for the purpose of minimizing taxes would not be required, as the probate court's authority was not an issue at trial. It would not have been required to instruct the jury that the standard of care did not include desires of the beneficiaries or was that which was required in the location of the estate's property. If jurisdiction is assumed, points twenty-seven through thirty-one would be overruled.

### Breach of Duty

Points thirty-two through thirty-six assert that the trial court erred in: refusing to submit appellant's requested instructions, definitions, and issues concerning the duty of Cluck, as an attorney, to the individual plaintiffs; submitting question one inquiring whether Cluck breached a fiduciary duty to the plaintiffs because there is no evidence that Cluck owed a fiduciary duty to the plaintiffs' decedent; submitting question three inquiring whether Cluck was negligent in the preparation or implementation of the estate plan as to the plaintiffs and the estate of Booney Moore because the plaintiffs failed to allege and prove that Cluck owed a duty of any nature to the plaintiffs, that there

was any privity of contract between Cluck and the plaintiffs, or that an attorney-client relationship existed between them.

Cluck argues that he was attorney for Coble Wall and did not owe a duty to the decedent or to the plaintiffs. Cluck testified that he was the sole stockholder of Coble Wall and Chairman of the Board, and he formulated the estate plan and discussed it with the heirs' accountants and attorneys. The jury, however, found that Coble Wall was the alter ego of Elwood Cluck. We have previously discussed the duty owed by Coble Wall, as guardian and temporary administrator, to the estate of Booney Moore. Whether we believe that Cluck owed a duty also is not necessary to state. This is because of the alter ego finding, which is not challenged. There can be no double recovery, and in oral argument, the plaintiffs' counsel so conceded. Points thirty-two through thirty-six would thus be moot.

Point thirty-seven (breach of duty and the effect of approval of the plan by the probate court) has been discussed previously.

Appellant argues points thirty-eight through forty-nine together. They are: question one was not supported by a pleading that Coble Wall owed a fiduciary duty to the estates and Dardeman and Garner; that Coble Wall did not owe a fiduciary duty to the plaintiffs; that plaintiffs' petition did not allege that Coble Wall failed to manage the estate as a prudent man would manage his own property; that there is no evidence that Coble Wall owed a fiduciary duty to Palmer as independent administrator of the estate, to Palmer as independent administrator of Davis' estate, to Dardeman, or to Garner; and that there is no evidence Coble Wall breached any duty imposed by the probate code.

The plaintiff's petition alleged that "Plaintiff would demonstrate that the Defendant Coble Wall Trust Company, Incorporated owed a fiduciary duty of the Plaintiff's decedent". The evidence at trial showed that the plaintiffs were beneficiaries of Moore pursuant to her will. The estate's funds were held by Coble Wall in a

fiduciary capacity for the benefit of the heirs as beneficiaries of Moore's estate. There was unobjected-to testimony that establishment of the plan was not consistent with what a reasonably prudent person would do and that Coble Wall was negligent in preparing the plan. There also was testimony that Coble Wall had a fiduciary duty to do what was necessary to protect the estate. If there were subject matter jurisdiction, points thirty-eight through forty-two would be overruled. Point forty-seven asserts essentially the same error as point forty.

Point of error forty-three is that there is no evidence that the breach of fiduciary duty was the proximate cause of damages to the plaintiffs. Appellant does not present any argument or authority directly related to this point of error. A point of error not supported by argument or authorities is waived. TEX.R.APP.P. 74(f); *Essex Crane Rental v. Striland Constr. Co.*, 753 S.W.2d 751, 756 (Tex. App.—Dallas 1988, writ denied). However, if we were to consider the merits of this "no evidence" point, we could consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). Bill Palmer testified that if there had been no estate plan, $30,000 would have been a reasonable fee for administering the estate. Cluck admitted that Coble Wall received $195,000 from Moore's estate. The estate tax form reported $580,546 for administrative expenses and attorney fees.

Points forty-four through forty-six are generally the same assertions concerning the statute of limitations, res judicata, and ratification contentions previously presented.

Appellant contends in points forty-eight and forty-nine that there is no evidence that either Coble Wall or Cluck was negligent in the preparation or implementation of the estate plan or that such acts were the proximate cause of damages to appellees. Frederick Zlotucha, an attorney representing Palmer on behalf of the es-

tate, testified that Cluck negligently valued the Moore's estate at $8.8 million and represented that $4 million would be paid in estate taxes without the plan. He testified that Coble Wall was not required to implement an estate plan and was negligent in proposing the plan he formulated. The plan attempted "to evade taxes rather than avoid taxes." He said the IRS viewed the estate plan as a "sham" merely attempting to alter the status of the property. Palmer testified that "the estate plan was a hoax" because the proposed steps could not be performed. It would have been impossible to distribute $750,000 cash to the heirs as proposed in the plan. As discussed above, Coble Wall did receive commissions and fees pursuant to the plan. In addition, substantial fees were paid to plaintiffs' attorneys who advised them on the estate plan. It was stated that had the plan not existed, the estate would have incurred less administrative fees. If jurisdiction is assumed, points forty-eight and forty-nine would be overruled.

### DTPA

Appellant contends in points fifty and fifty-one that the DTPA did not apply to the actions undertaken by Coble Wall as guardian and administrator. The plaintiffs alleged that Cluck and Coble Wall "represented to the Plaintiffs that they could devise an estate plan for the purpose of minimizing taxes and that [d]efendants represented that the tax savings would be substantial and of benefit to the estate and the beneficiaries". The petition further alleged that the plaintiffs were "consumers" who sought to acquire services from the defendants and that the defendants were engaged in trade or commerce, all as defined in the DTPA. Appellees alleged violations of several standard DTPA provisions.

Section 17.45(4) defines "consumer" as an individual who seeks or acquires by purchase or lease any goods or services. A plaintiff establishes standing as a consumer in terms of its relationship to a transaction, not by a contractual relationship with the defendant. *Birchfield v. Tex-*

*arkana Memorial Hosp.,* 747 S.W.2d 361, 368 (Tex.1987). "The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." *Kennedy v. Sale,* 689 S.W.2d 890, 893 (Tex.1985). Privity between the plaintiff and defendant is not required. *Kennedy,* 689 S.W.2d at 892.

Neither party presents arguments concerning the survival of a DTPA action under the facts of this case. However, as previously stated, we will not address the application of the DTPA action. Our decision regarding jurisdiction of the probate court makes this unnecessary.

Points of error fifty-two, fifty-three, and fifty-four also ensue from the DTPA proof with assertions that there is no evidence and factually insufficient evidence that Cluck represented that the estate plan had characteristics or benefits which it did not, engaged in unconscionable conduct, and that such actions were the producing cause of damages. These points have not been briefed with authorities presented as required. Further, because we have determined that the probate court had no jurisdiction of this cause of action, we have no need to address points fifty-two through fifty-four.

The judgment is reversed and rendered.