SAN ANTONIO SAVINGS ASSOCIATION and Xavier Sanchez, Trustee,

v.

William PALMER, Independent Administrator of the Estate of Booney M. Moore, Robert E. Dardeman, Marie M. Davis and Helen M. Garner, Individually and as Heirs of the Estate of Booney M. Moore.

No. 04–88–00447–CV.

Court of Appeals of Texas, San Antonio.

Aug. 30, 1989.

Rehearing Denied Oct. 18, 1989.

Robert E. Golden, Charles M. Jefferson, Smith, Barshop, Stoffer & Millsap, San Antonio, for appellants.

Frederick R. Zlotucha, San Antonio, for appellees.

Before CADENA, C.J., BIERY, J., and GERALD T. BISSETT, Assigned Justice.

## OPINION

GERALD T. BISSETT, Assigned Justice.

This is an appeal from a summary judgment in favor of William Palmer, Independent Administrator of the Estate of Booney M. Moore, Deceased, Robert E. Dardeman, Marie M. Davis, and Helen M. Garner, individually and as devisees and legatees of Booney M. Moore, Deceased, plaintiffs in the court below and appellees in this Court. They will be referred to as "plaintiffs." San Antonio Savings and Loan Association, hereinafter "SASA," and Xavier Sanchez, trustee under the hereinafter mentioned deed of trust, and who is a nominal party to this appeal, were defendants in the court below and are appellants in this Court.

SASA purchased five general mortgage bonds from the Estate of Booney M. Moore, Deceased, hereafter the "decedent's estate," for the sum of $2,400,000.00 cash. The bonds were secured by a deed of trust on certain real property, hereinafter particularly described, in Bexar County. Xavier Sanchez was the trustee. When payments on the underlying obligation were not timely made by the personal representative of the decedent's estate, SASA posted the real property for foreclosure.

On November 30, 1987, plaintiffs brought suit in the 57th Judicial District Court of Bexar County, Texas, to enjoin defendants from foreclosing under the deed of trust. On March 4, 1988, the case was transferred to Probate Court No. 2, Bexar County, and consolidated with the administration of the decedent's estate. Thereafter, plaintiffs filed an amended petition asking the probate court to declare the lien on the real property to be void and to cancel the underlying debt. SASA, among other assertions, asserted that the lien and debt were valid and that plaintiffs were estopped to challenge their validity.

Plaintiffs and defendants both filed motions for summary judgment. On May 31, 1988, the probate court signed and rendered a final summary judgment, granting plaintiffs' motion and denying defendants' motion. The court, in its judgment, declared that SASA's lien was void and that the underlying debt was equally void, and permanently enjoined SASA from foreclosing on the real property. As a result of this judgment, plaintiffs own the subject property free of all debt and have received

$2,400,000.00, paid to decedent's estate by SASA, which they are under no obligation to repay.

Booney M. Moore was the sole owner of a 187–acre tract of land off Bandera Road in San Antonio, Texas, hereafter the "Bandera Road property." On April 12, 1985, the Coble Wall Trust Company, Inc. was appointed guardian of the "Estate of Booney M. Moore, an Incompetent Person," in Cause No. 84–PC–2756. Elwood Cluck was Chairman of the Board in the Coble Wall Trust Company, Inc. and its attorney. He developed a plan for the Estate of Booney M. Moore, an Incompetent Person, hereafter the "guardianship estate." The Bandera Road property was worth several million dollars, and once Mrs. Moore died, substantial estate and inheritance taxes would be due. Mrs. Moore did not possess sufficient liquid assets to pay such taxes. Accordingly, the plan, if put into operation, would avoid the forced sale of the Bandera Road property upon the death of Mrs. Moore, and would inject liquidity into her estate.

In devising the estate plan, the guardian had negotiations and discussions with attorneys representing Mrs. Moore's devisees, legatees, and heirs. The attorneys for all interested parties reviewed the proposed estate plan. On November 22, 1985, the probate court entered its order authorizing the establishment of an estate plan, which was approved and agreed to by Robert Dardeman, Helen Garner, Marie Davis, and their attorneys. The order noted that Booney M. Moore was then 93 years old, in poor health, and had a life expectancy of probably less than thirty days. The guardian, pursuant to the estate plan, was ordered to organize a Texas corporation, to be named "The Estate of Booney M. Moore, Inc.," hereafter the "corporation," for the purpose of acquiring Mrs. Moore's title to the Bandera Road property and other real property owned by her. The guardian was also ordered to convey all of the Bandera Road property and other real property owned by Mrs. Moore to the corporation in exchange for 10,000 shares of preferred stock of the corporation, 1,000 shares of common stock of the corporation, and $2,500,000.00 in general mortgage bonds issued by the corporation. The guardian was further ordered to offer the general mortgage bonds for sale to the public for cash in order to obtain funds for the support of Mrs. Moore and for the payment of estate, inheritance, and other taxes upon her death.

Pursuant to the order, the corporation was created on November 22, 1985. On November 25, 1985, the guardian conveyed the Bandera Road property to the corporation in exchange for the common stock, the preferred stock, and the general mortgage bonds of the corporation. SASA was contacted by the guardian for the first time on November 26, 1985, regarding the sale of the bonds.

Booney M. Moore died on December 12, 1985. The guardianship proceeding was discontinued and a new proceeding in the probate court, entitled "The Estate of Booney M. Moore, Deceased," was commenced. The Coble Wall Trust Company was appointed by the probate court to be the temporary administrator of the decedent's estate. One of the specific powers given to the temporary administrator in the probate court's order was the power to complete the estate plan previously approved by the probate court in the guardianship proceeding.

On December 19, 1985, SASA issued a commitment letter to the decedent's estate, in which it agreed to purchase the general mortgage bonds from the estate for $2,400,000.00 in cash. Payment of the bonds was secured by a first lien deed of trust on the Bandera Road property, dated November 25, 1985, executed by the president of the corporation, as grantor, to Xavier Sanchez, as trustee.

On December 26, 1985, the temporary administrator filed an "Application for Sale of Personal Property" with the probate court, seeking the court's permission to complete the estate plan by having the decedent's estate sell the mortgage bonds of the corporation to SASA upon the terms set out in the commitment letter. The pro-

bate court authorized this sale by its order dated December 26, 1985.

On December 31, 1985, the general mortgage bonds were sold by the decedent's estate to SASA for $2,400,000.00 cash. In return, SASA received the bonds and a first deed of trust lien on the Bandera Road property.

The guardian filed its final account in the guardianship proceeding on February 15, 1986. It recited: 1) that the guardian conveyed the Bandera Road property and other tracts of land belonging to Mrs. Moore to the Estate of Booney M. Moore, Inc., a Texas Corporation, on November 25, 1985, "in exchange for stock and bonds"; 2) that it received the general mortgage bonds (face value, $2,500,000.00) issued by the corporation on November 25, 1985, "in exchange for real property"; and 3) that the general mortgage bonds were sold by the decedent's estate to SASA on December 31, 1985, for $2,400,000.00. The probate court approved the guardian's final account by order signed on April 9, 1986.

The interest payment on the bonds due on July 1, 1987, was not paid. SASA made demand for the delinquent payment and when such payment was not forthcoming, SASA declared the balance due on the mortgage bonds immediately payable and posted the property for foreclosure. Thereafter, on November 30, 1987, plaintiffs filed their original petition to block the foreclosure sale of the Bandera Road property. Such foreclosure sale was enjoined by the probate court, pending final trial. Plaintiffs, in their second amended petition, sought to void SASA's lien against the Bandera Road property and to cancel the underlying debt owed to SASA. In addition, they asserted causes of action for negligence, fraud, infliction of mental anguish, conspiracy, and breach of a duty of good faith and fair dealing; and they sought a permanent injunction to enjoin and restrain a foreclosure sale on the Bandera Road property. SASA then filed its second amended answer and counterclaims, in which it asserted: 1) the validity of the guardian's sale; 2) the affirmative defense of estoppel; 3) a cause of action for re-scission on the grounds of mutual mistake of fact; and 4) total failure of consideration.

Plaintiffs, in their motion for summary judgment, sought to obtain summary judgment solely on the issues of the invalidity of SASA's mortgage lien against the property and the invalidity of the debt, asserting that the sale of the Bandera Road property by the guardianship estate to the corporation on November 25, 1985, was void, and the deed of trust given as security was also void, because after the sale took place no report of sale in the guardianship estate was filed with the probate court, and the court did not sign an order approving the sale.

SASA then filed its own motion for summary judgment, contending, among other contentions, that 1) as a matter of law, the transfer of the Bandera Road property was valid and that the lien had been created in compliance with the Probate Code; and 2) plaintiffs were estopped from challenging the validity of the lien in question.

Thereafter, the probate court ordered a severance of the actions. The probate court severed out all of plaintiffs' claims for monetary damages and ordered that the claims remaining in the main action (now before this Court in this appeal) were those claims relating to whether SASA's lien was invalid and whether SASA should be enjoined from foreclosing on the subject property. In addition, SASA's counterclaims were ordered to remain as part of the main action. Subsequently, SASA filed its third amended answer and counterclaims. The probate court then signed a supplemental order for severance, which effectively severed SASA's counterclaims from this case.

In its final summary judgment, the probate court decreed: 1) the transfer of the Bandera Road property to the corporation was void; 2) the transfer of the bonds to SASA was void; 3) the debt owed by the decedent's estate to SASA was void; and 4) SASA was permanently enjoined from foreclosing or attempting to foreclose any legal or equitable lien purportedly held by it against the property.

It is defendants' position that the transactions complied with the Probate Code and were valid. They argue that, at the least, by accepting and retaining the $2,400,-000.00 consideration, plaintiffs are estopped to deny the transaction's validity. Defendants, among other contentions, further contend that if the transactions are void, the decedent's estate nevertheless owes SASA the $2,400,000.00 it retained, and that even if the probate court is correct in holding that the transactions are invalid, it has committed reversible error by permanently enjoining SASA from foreclosing against the property when there are pending causes of action in the severed case which may lead to a judicial foreclosure by SASA.

■ Plaintiffs contended, and the probate court agreed, that the transfer of the Bandera Road property from the guardianship estate to the corporation and the sale of the mortgage bonds by the decedent's estate to SASA were void because no reports of the sales were filed with the probate court, pursuant to TEX.PROB.CODE ANN. §§ 339, 353 (Vernon 1980) (hereafter "the Code"), and because the probate court did not enter orders confirming the sales, pursuant to section 355 of the Code.

The central question is whether transfers of property, carried out as part of an estate plan approved by the probate court pursuant to sections 230 and 234 of the Code, are void unless reports of the sale are filed and orders confirming the sale are entered by the probate court.

The Coble Wall Trust Company, the guardian of the guardianship estate, filed an application for order authorizing the establishment of an estate plan in the probate court, pursuant to section 230(b)(2)(A) of the Code. The order of November 22, 1985, authorized the establishment of an estate plan and provided the exact steps to be taken by the guardian in order to carry out the plan. While the initial order called for the guardian to sell the bonds to the public for cash, subsequent orders by the probate court authorized the sale of the bonds to SASA for $2,400,000.00 cash.

The transfer of the Bandera Road property by the guardian to the corporation and the sale of the bonds by the temporary administrator of the decedent's estate to SASA under the circumstances are not the type of transactions covered by the procedural safeguards contained in sections 331 through 358 of the Code.

Under the procedure contemplated by these sections, the personal representative of an estate will ordinarily file an application to sell real estate, pursuant to section 341 of the Code. If the probate court decides that the sale is necessary or advisable, the court will order the sale to be made, pursuant to section 346 of the Code. However, the probate court does not order the representative of an estate to sell the property to a particular individual at a predetermined price. Accordingly, it is a necessary protection to require the personal representative of the estate to file a report of the sale and to obtain the probate court's confirmation of the sale. Section 355 specifically provides that the probate court shall determine if "the sale was for a fair price."

In the instant case, both the purchaser and the price were determined in advance as part of the order approving the estate plan, and the order directing the sale of the bonds to SASA. The probate court knew to whom the real property was being conveyed and what consideration the guardianship estate was receiving. A report of the sale and order confirming the sale would be superfluous, since there was no question concerning what property of the guardianship estate was being conveyed, the terms of the conveyance, or what the guardianship estate was receiving in return. All of these matters had been determined in advance. Therefore, the transfer of the Bandera Road property to the corporation was valid, pursuant to section 230 of the Code, even though no report of sale or order confirming sale was ever made.

Section 234 of the Code is also applicable in this case. That section permits the personal representative of an estate, upon application and order authorizing same, both of which are present in the instant case, to

purchase or exchange property without a confirmation order being required.

The transfer of the Bandera Road property by the guardian to the corporation was not a sale within the purview of sections 331, 341 through 348, 350, 353, and 355 of the Code. Instead, it was an exchange of properties, as authorized and ordered by the probate court, in accordance with the provisions of section 234(a)(1) of the Code.

In *Baldwin v. Davis Hill Oil Co.*, 245 S.W.2d 353 (Tex.Civ.App.—Beaumont 1951, writ ref'd n.r.e.), the guardian of a ward deeded real property to a third party. A dispute later arose over whether title to the ward's property had been properly conveyed to Wallace, because there was no order confirming the sale by the probate court. The plaintiffs contended that the conveyance to Wallace was a sale governed by the statutes regulating sales of a ward's land. In rejecting this assertion, the Court stated at 367–68:

> Article 1987, R.S. 1895 [the predecessor statute to section 234, Probate Code], was the governing statute. It does not provide for a report to the county court by the guardian, and it does not provide for an order confirming or approving the action taken by the guardian pursuant to an order granting him permission to make a compromise or settlement; and we have found no other statute which provides for such a report or confirmation in such a case. We conclude that the Probate Court was not expected to take any action regarding the compromise or settlement after making an order authorizing the compromise; and we hold that none was necessary.
>
> . . . .
>
> As a matter of fact, there was nothing for Moore's guardian to report to the Probate Court except Wallace's payment of the price to him and his delivery of a deed to Wallace; and a report of such matters, and an approval of such actions, is not even required in the case of a sale of land. It seems to us that the order provided for in Article 1987, R.S. 1895 is the equivalent of, and that it performs

the same function as, the order of confirmation in the case of a sale.

While *Baldwin* involves a compromise or settlement relating to disputed property of the estate, it stands for the proposition that a confirmation order is not required under section 234 of the Code. In the instant case, the guardian conveyed real property to the corporation in exchange for stock and mortgage bonds. No cash changed hands, and the nature of the transaction was essentially an exchange rather than a sale. Everything was done in accordance with the estate plan approved by the court. The order approving the estate plan was the equivalent of and performed the same function as the order of confirmation in the case of a sale. Accordingly, the transfer of the Bandera Road property was proper, pursuant to sections 230 and 234 of the Code, and no report of sale or order confirming sale was required. Therefore, the transfer of the Bandera Road property was not void, and the deed of trust executed by the corporation, acting by its president, to Xavier Sanchez, Trustee, created a valid lien on the Bandera Road property.

■ There is an additional reason the transactions in dispute were valid under the Probate Code. After all of the transactions had taken place, the guardian filed its account for final settlement on February 18, 1986. In its account, it listed the conveyances of property from the guardianship estate to the corporation, the receipt of stock in the corporation by the guardianship estate, and the sale of the mortgage bonds. The probate court approved the account for final settlement on April 9, 1986.

In *Neill v. Cody*, 26 Tex. 286 (1862), our Supreme Court, speaking through Chief Justice Wheeler, said:

> A confirmation of the sale, or something from which a confirmation might be inferred, or, at least, something done by the purchaser giving him the right to have the sale confirmed, must have been shown to enable him to claim title under it.

*Id.* at 290; *see also, Baumgarten v. Frost,* 143 Tex. 533, 186 S.W.2d 982, 985 (1945);

*Robertson v. Johnson,* 57 Tex. 62, 66 (1882).

In *Ferguson v. Templeton,* 32 S.W. 148 (Tex.Civ.App.1895), *aff'd,* 89 Tex. 47, 33 S.W. 329 (1895), there was no order confirming the sale of estate property. However, the Court refused to hold that the sale was void. The Court noted that there had been an application for sale (since lost) and an order of sale, but no order confirming the sale. Subsequent to the sale, however, there was an approval of the final account of the administrator. From these facts, the Court concluded:

> We think the order, taken with the application referred to in the order, is sufficiently definite to validate the act of the administrator in making the sale; and, while there is no formal order of the court confirming the sale, the approval of the final account of the administrator, and his discharge and that of his sureties, is, in our judgment, a substantial compliance with the law requiring an order of confirmation.

*Id.* at 151. "If any confirmation of sale were required ... the evidence shows compliance in approving the account of the administrator showing the sale." *Pendleton v. Shaw,* 18 Tex.Civ.App. 439, 44 S.W. 1002, 1010 (writ ref'd).

In the case at bar, the order of the probate court approving the guardian's final account constitutes a de facto confirmation of the transfer of the Bandera Road property by the guardian to the corporation. The transfer of the Bandera Road property, the execution by the corporation of the deed of trust to secure the payment of the general mortgage bonds, and the sale of the bonds to SASA are valid under the provisions of the Code. Accordingly, the probate court erred in granting summary judgment to plaintiffs and refusing to grant summary judgment to defendants. The first point of error is sustained.

■ Assuming, *arguendo,* that the transfer of the Bandera Road property, the deed of trust securing the payment of the bonds, and the sale of the bonds were void because of the lack of confirmation thereof, there is another reason the probate court erred in granting summary judgment to plaintiffs and refusing to grant summary judgment to defendants. Plaintiffs were equitably estopped from challenging the validity of SASA's lien and the underlying debt as a matter of law, as asserted by defendants in their second point of error.

It is undisputed that SASA paid $2,400,-000.00 in cash to the decedent's estate, and in return received five general mortgage bonds, each of which had a face value of $500,000.00, the payment of which was secured by a deed of trust. It is also undisputed that the $2,400,000.00 was used to pay decedent's estate tax obligation, and neither the personal representative of decedent's estate nor any of the other plaintiffs in this case have offered to return any part of the $2,400,000.00, which was used for their benefit. Plaintiffs contend that they are entitled to have the lien on the Bandera Road property cancelled and at the same time keep the $2,400,000.00. We do not agree.

The case presented in this appeal is not a case of estoppel in pais. It is a case of estoppel by election, and is based on the principle that a person will not be permitted to accept the beneficial part of a transaction and repudiate the disadvantageous part. *See Simmons v. Clampitt Paper Co.,* 223 S.W.2d 792, 794 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r.e.); *Davis v. Cass County,* 111 S.W.2d 751, 753 (Tex.Civ. App.—El Paso 1937, no writ); *Mauritz v. Schwind,* 101 S.W.2d 1085, 1092 (Tex.Civ. App.—Amarillo 1937, writ dism'd). In *Millican v. McNeill,* 102 Tex. 189, 114 S.W. 106 (1908), the administrator of an estate procured an order from the court for the sale of a lot, which order was void. The heirs brought suit to recover the lot from its purchaser. The Supreme Court held that the heirs could not recover the lot unless they refunded the purchase money, and stated:

> Another objection to the judgment is that the heirs were not required to refund the purchase money paid for the property which went to discharge debts by which their title was incumbered. This equity was pleaded by the defen-

dants, and the principle invoked is well settled by the decisions of this court. *Id.* at 108. In *Loving v. Clark*, 228 S.W. 590 (Tex.Civ.App.—Amarillo 1921, no writ), real property was sold by the personal representative of an estate with neither an order of sale nor an order confirming the sale. The heirs filed suit to regain title to the land. The Court said:

> Although the deed may have been void for want of an order of sale or an order of proper confirmation, it is not now our purpose to determine. The facts and pleadings show an apparent title in the executor. The facts and pleadings show that appellant paid $2,700 for it. It is admitted he acted in good faith in paying the sum, and the court finds that the proceeds so received were applied on indebtedness due on farm lands belonging to the appellees, which they took under the will of their father. The pleadings of the appellant amounted to a plea to be subrogated to the amount so paid before the appellees could recover, and to require them to pay the sum before they recovered the lot. It seems to be the rule in such cases that the heirs could not recover the land without paying or tendering back the money so paid and used for the benefit of the estate.

*Id.* at 594; *see also, Halsey v. Jones*, 86 Tex. 488, 25 S.W. 696, 696–97 (1894); *Northcraft v. Oliver*, 74 Tex. 162, 11 S.W. 1121, 1122–23 (1889); *McMinn v. Cope*, 112 S.W. 809, 812 (Tex.Civ.App.1908, no writ).

As stated in *Theriot v. Smith*, 263 S.W.2d 181 (Tex.Civ.App.—Waco 1953, writ dism'd):

> One who retains benefits under a transaction cannot avoid its obligations, and is estopped to take a position inconsistent therewith. The doctrine of equitable estoppel is applicable to a transaction in which it would be unconscionable to permit a person to maintain a position inconsistent with one he has acquiesced in or of which he has accepted any benefit. And so the acceptance of any benefit from a transaction with knowledge or notice of the facts and rights will create an estoppel.

*Id.* at 183. In the instant case, it would be unfair and unconscionable to allow plaintiffs to pocket $2,400,000.00 of SASA's money while voiding the deed of trust against the Bandera Road property. They are not entitled to keep both the land and the money. It is as simple as that. This is exactly the situation that the doctrine of estoppel by election is designed to prevent. The second point of error is sustained.

The judgment of the probate court is reversed and judgment is here rendered that the deed of trust on the Bandera Road property is valid, that the sale of the general mortgage bonds to San Antonio Savings and Loan Association was a valid sale, and the permanent injunction which enjoined San Antonio Savings and Loan Association from foreclosing its deed of trust lien on the Bandera Road property is vacated.

CADENA, Chief Justice, concurring.

I agree with the result. While I agree that appellees cannot be permitted to invoke the aid of equity in cancelling the lien without returning the $2,400,000 paid to them by SASA, I am not prepared to justify that conclusion based on a doctrine of "estoppel by election." The rule, referred to in the cases cited in the opinion of the court, is not a rule concerning a species of estoppel. The facts in this case do not establish the existence of the elements of any type of estoppel. Reference to the maxim that he who seeks equity must do equity would, perhaps, be more appropriate.

BIERY, J., joins.