### The COBLE WALL TRUST COMPANY, INC. & Elwood Cluck, Appellants,

### v.

### William PALMER, as Independent Administrator, et al., Appellee.

### No. 04-90-00063-CV.

Court of Appeals of Texas, San Antonio.

June 30, 1993.

Rehearing Denied July 30, 1993.

---

Barry A. McClenahan, Elwood Cluck, San Antonio, for appellants.

Thomas C. Hall, Law Office of Tom Hall, P.C., San Antonio, for appellee.

Before BUTTS, GARCIA and RICKHOFF, JJ.

## OPINION

BUTTS, Justice.

The supreme court ruled that the probate court had jurisdiction of this lawsuit which was based on alleged consumer law violation and common law negligence of the guardian/temporary administrator.[1]  Jurisdiction being the only issue dealt with by the supreme court, the case was remanded for disposition of the remaining points of error. *See Coble Wall Trust Co. v. Palmer,* 848 S.W.2d 696 (Tex.App.—San Antonio 1991), *rev'd, Palmer v. Coble Wall Trust Co.,* 851 S.W.2d 178 (Tex.1992).  We reconsider and revise our earlier decision regarding some points of error.

The San Antonio appeals court previously decided a related case involving implementation of the same estate plan, based on the same facts as in this case. *See San Antonio Savings Ass'n v. Palmer,* 780 S.W.2d 803 (Tex.App.—San Antonio 1989, writ denied).

---

1.  The supreme court construed the 1985 amendment to section 5A(b) of the probate code. *See* Act of June 15, 1985, 69th Leg., R.S., ch. 875, § 1, 1985 Tex.Gen.Laws 2995, 2996.  The provision was amended again in 1989. *See* Act of June 16, 1989, 71st Leg., R.S., ch. 1035, § 3, 1989 Tex.Gen.Laws 4162, 4163.

This appeal arises from a judgment following a jury verdict in favor of plaintiffs, who are Robert E. Dardeman and Helen Marie Garner, nephew and niece of Booney Moore, and William Palmer, independent administrator of the estate of Booney Moore and independent administrator of the estate of Marie M. Davis. Defendants and now appellants are Coble Wall Trust Company, Inc. (Coble Wall) and Elwood Cluck, an attorney and chairman of Coble Wall.

On April 12, 1985, the probate court appointed Coble Wall guardian of the estate of Booney M. Moore (Moore), an elderly incompetent person. The record reflects that Cluck, the sole stockholder of Coble Wall, worked several months with the legatees and their attorneys, making changes in the proposed estate plan according to their wishes. He applied in November, 1985, to establish the estate plan. *See* TEX. PROB.CODE ANN. § 230(b)(1), (2)(B) (Vernon 1980).

The application for the estate plan listed Moore's estate as $387,454 in cash, personal property valued at $19,400, two real estate lots valued at $8000 (Riverbend lots), and approximately 196 acres adjacent to Bandera Road with an estimated value of $5,332,950. The application recited that appraisers would submit their own valuation of the Bandera property later, and that figure would be substituted in the plan. The application projected the total estimated estate tax liability upon Moore's death would amount to approximately $2,712,167. Since Moore's estate was without sufficient cash, the purpose of the estate plan was to provide present liquidity to pay estate taxes and administration expenses. *See* TEX. PROB.CODE ANN. § 329 (Vernon Supp.1993).

After discussions with Moore's legatees and their attorneys, Coble Wall, through Cluck, finalized the estate plan. It was reviewed and approved by all the interested parties and attorneys.

The estate plan set up a corporation, the Estate of Booney M. Moore, Inc., to which would be conveyed all of the real property in exchange for shares of preferred and common stock. The corporation would issue $2,500,000 general mortgage bonds for sale to be secured by a deed of trust on the Bandera Road property. The plan specified that the Bandera Road property would be sold, paying off the mortgage bonds, with the balance to be distributed to the legatees.

A board of directors and officers was created with the attorneys of Davis, Garner, and Dardeman as directors of the corporation. In addition, the independent executor of Moore's estate at that time and two disinterested attorneys were named board members.

The estate plan provided that Coble Wall would be paid a fee of $75,000 or ten percent of the reduction in federal taxes, one and one half percent of the amount of a letter of credit which might be necessary, five percent of the net proceeds from the sale of the mortgage bonds, five percent of the gross sales price of the real estate when sold, and five percent of the gross sales price of the common stock when sold. There was no letter of credit obtained; the real estate was not sold by Coble Wall; the common stock was not sold. Coble Wall was removed at the request of plaintiffs and their attorneys in March 1986.

As noted, the estate plan was established because Moore did not have sufficient liquid assets to pay substantial estate and inheritance taxes to become due upon her death. Also, by causing distribution of gifts to the legatees, the plan would reduce taxes. Before the probate court approved the estate plan, the three legatees, Davis (who was still living), Dardeman, and Garner, appeared in court with their attorneys, who advised them concerning the estate plan. It is not disputed that the attorneys and plaintiffs agreed to the estate plan before the probate court approved it on November 22, 1985. In the approved order of the court the figure of $9,000,000 was substituted according to the appraisers' valuation of the real property, as was the figure of $4,503,700, the new estimated estate and inheritance taxes. Moore died shortly after this; the probate court then appointed Coble Wall as temporary administrator.

In December, 1985, a court order authorized Coble Wall to sell the mortgage bonds to San Antonio Savings Association, for which Coble Wall received a substantial fee. The final account of the guardian, Coble Wall, sets out the entire transaction concerning the mortgage bonds and deed of trust lien on the property. The probate court approved Coble Wall's final account as guardian on April 9, 1986.

But before approving the final account of the guardian, the probate court conducted a hearing based on objections by the new administrator of the estate, William Palmer, and the other plaintiffs. Among the many objections were that all the assets were not listed and the valuations of the assets were not supported by facts or documentation. Also the fees and expenses paid by the guardian were not reasonable, nor were there reasonable valuations to support the expenditures. After a full hearing the probate court approved the final accounting and discharged the guardian from all liability. Plaintiffs did not appeal.

For the second time, again because of objections by the plaintiffs, including the present independent administrator, Palmer, the probate court delayed the final hearing and approval of the account of Coble Wall as the temporary administrator. The record reflects that the attorneys for the plaintiffs had been paid substantial fees from the estate, and the CPA, appraisers, and others had been paid fees. Only after a full hearing did the probate court approve the final account and discharge Coble Wall as temporary administrator. It is significant that no appeal was taken from that final order.

### Sale of the Mortgage Bonds

SASA purchased the mortgage bonds for $2,400,000, according to the estate plan, and secured the indebtedness by a deed of trust on the Bandera Road property. The evidence shows that Coble Wall, through its chairman, Cluck, established an escrow account for taxes, required by the IRS, by investing $2,000,000 in a mutual fund, and immediately began receiving returns on that investment. The legatees had each received some cash, and other small distributions were made before Moore's death.

The record shows that the returns from the mutual fund paid the interest on SASA's debt until after Coble Wall's last actions as temporary administrator. At the instigation of Dardeman, Garner, and the independent administrator of Moore's estate, as well as Davis' estate, Coble Wall was removed as temporary administrator in March, 1986. At that time the $2,000,000 escrow for taxes was withdrawn from the mutual fund and deposited in a Boerne, Texas bank.

### Sale of Bandera Road Property

With Coble Wall removed as temporary administrator and Palmer now the independent administrator, plaintiffs sold the Bandera Road property on May 10, 1986 to River City International, Inc. for over seven million dollars. The purchaser assumed the bond indebtedness to SASA. However, River City defaulted and deeded the land back to the Moore estate. The administrator testified that "[w]hat we were hoping" was that they would pay off the notes (mortgage bonds) and the heirs would then get the money (for the land). But, said the administrator, "they" could not sell the land, and the plaintiffs had to take the land back. Thereafter, it was impossible to make the $70,000 per quarter payments to SASA since the estate had no cash. The plaintiffs blamed Coble Wall and Cluck for placing them in that position. In 1987 plaintiffs failed to pay the interest on the SASA debt, and the land was posted for foreclosure.

### Suit against SASA

On November 30, 1987, plaintiffs, through Palmer, sought to enjoin SASA's foreclosure under the deed of trust; that suit was consolidated with the administration of the decedent's estate. SASA asserted that plaintiffs were estopped to challenge the valid lien and debt. Contrary to SASA's assertion, the probate court declared the lien and underlying debt void and issued a permanent injunction against foreclosure. This court in *San Antonio*

*Savings Ass'n. v. Palmer,* 780 S.W.2d 803, reversed the case and noted that the plaintiffs under that ruling would have owned the property free of debt and also received $2,400,000 from SASA which they were not obligated to repay.

The *SASA* opinion answered the question whether transfers of property carried out as part of the estate plan approved by the probate court pursuant to the probate code were rendered void for lack of reports of the sale in probate court with an order entered. It was held that transfer of the Bandera Road property by the guardian to the Estate of Booney Moore Corporation and sale of the bonds are not the types of transactions covered by the procedural safeguards of sections 331 through 358 of the probate code. Moreover, in the SASA transaction both the purchaser and the price were determined in advance *as part of the order approving the estate plan.* The court wrote:

> The transfer of the Bandera Road property by the guardian to the corporation was not a sale within the purview of sections 331, 341 through 348, 350, 353, and 355 of the Code. Instead, it was an exchange of the properties, as authorized and ordered by the probate court, in accordance with the provisions of section 234(a)(1) of the Code.

Further, it was pointed out that the $2,400,000 was accepted by the plaintiffs and used to their benefit. Therefore, the plaintiffs would not be permitted to accept the beneficial part of the transaction and repudiate the disadvantageous part. *San Antonio Savings Ass'n. v. Palmer,* 780 S.W.2d at 809–10. The court further held that

> the order of the probate court approving the guardian's final account constitutes a de facto confirmation of the transfer of the Bandera Road property by the guardian to the corporation. The transfer of the Bandera Road property, the execution by the corporation of the deed of trust to secure the payment of the general mortgage bonds, and the sale of the

> bonds to SASA are valid under the provisions of the Code.

*Id.* at 809.

### The Res Judicata Defense

We revise our earlier opinion to sustain points of error 21, 22, 23, 37, and 45 as they pertain to res judicata and collateral estoppel. Our former opinion failed to recognize that the reply brief of Coble Wall clearly raises and presents arguments on the issue of res judicata. The trial court overruled all res judicata defenses and objections at the trial level.

Plaintiffs did not appeal either of the probate court orders approving final accounts and discharging the guardian and temporary administrator after objections were presented and a hearing conducted. The avenue of direct appeal was open to appellees. TEX.PROB.CODE ANN. § 5(f) (Vernon Supp.1993).

■ A probate court's orders, however, are subject to collateral attack if the court did not have jurisdiction over the order. This court in the *SASA* case acknowledged that the probate court had jurisdiction to order implementation of the estate plan regarding the transaction and sale of the Bandera land and held that was a valid order and sale. In this case against Coble Wall and Cluck, the plaintiffs are questioning the validity of those orders and, thus, the authority of the probate court to issue those orders. On the other hand, they admitted the orders were valid when they accepted the benefits of the SASA sale and again when they sold the land to River City with its assumption of their debt to SASA.

The orders of the probate court implementing the estate plan and ordering the subsequent sale of the mortgage were held to be valid in the *SASA* case. They may not be attacked collaterally. Further, both of the final accounting orders were objected to by the legatees and the present administrator. Thereafter, full evidentiary hearings were conducted by the probate court. After the hearings, the probate court approved and signed the two final accountings orders. These valid orders also are not subject to collateral attack.

(We note fraud by Coble Wall was not alleged or proved, nor was that question submitted to the jury.)

In *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984), the supreme court wrote:

> Res judicata is frequently characterized as claim preclusion because it bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit. *Russell v. Moeling,* 526 S.W.2d 533, 536 (Tex.1975). When a prior judgment is offered in a subsequent suit in which there is identity of parties, issues and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment. *Texas Water Rights Com'n v. Crow Iron Works,* 582 S.W.2d 768, 771 (Tex.1979); *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971).

*Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d at 818. "The doctrine of res judicata states that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal." *Texas Waters Rights Com'n v. Crow Iron Works,* 582 S.W.2d at 771.

The plaintiffs complain that the estate plan was ineffectual to accomplish its stated purpose, was exorbitantly expensive, and involved excessive fees for Coble Wall and Cluck. All of these matters were expressly placed before the court in the application for an order approving the estate plan, submitted to and approved by the legatees and their attorneys who actually joined to seek approval of the probate court. The objections to the plan, including ineffectiveness and "exorbitantly expensive" fees, were heard by the probate court before the two final accountings were ordered approved. All of the plaintiffs were either present at those hearings or appeared and participated through their attorneys and/or their independent administrator. All of the contentions advanced by the plaintiffs were placed in issue and adjudicated. The two orders approving the final accountings were adjudicated adversely to them. To come into court now and relitigate the same issues, although denominated as negligence and DTPA actions, constitutes a collateral attack on those previous judgments, from which no appeal was taken.

■ A probate court is a court of general jurisdiction and its orders, like those of the district court, are usually immune to collateral attack. *Dallas Joint Stock Land Bank v. Forsyth,* 130 Tex. 563, 109 S.W.2d 1046, 1050 (1937), *accord, Bohlssen v. Bohlssen,* 56 S.W.2d 913, 916 (Tex.Civ. App.—Galveston 1932, no writ). The *Bohlssen* court held:

> [T]he judgment approving the final account and discharging the guardian and her sureties, being upon its face a valid judgment of a court of competent jurisdiction, cannot be collaterally attacked in any other court. Such judgment is only subject to a direct attack by motion for new trial, appeal therefrom, or bill of review brought in the court in which the judgment was rendered, under the equitable rules regulating such proceedings.

*Bohlssen v. Bohlssen,* 56 S.W.2d at 916. *Accord Stevenson v. Tice,* 593 S.W.2d 794, 796 (Tex.Civ.App.—Eastland 1980, no writ). In the present suit, plaintiffs necessarily are raising the question of the invalidity of the probate court judgments approving the final accounts and discharging Coble Wall as guardian and temporary administrator on the basis of negligence of Coble Wall and misrepresentations regarding the implementation and effect of the estate plan. Each of the acts complained of was conducted under the authority of a probate court order. In addition, these same acts were the basis of complaints and issues by plaintiffs heard by the probate court before the orders approving the final accounts were entered. These matters cannot be inquired into in this suit; the two judgments, having been rendered by a court of competent jurisdiction, and being in full force and effect, are res judicata of all the

matters involved therein. The points of error are sustained.

Although the present suit is an impermissible collateral attack and results in a reversal, we will address two other areas of law in this case.

## The DTPA CLAIM

█ In answer to question 5 the jury found that Coble Wall and Cluck did not represent that their **services** had characteristics, uses, or benefits which they did not have or involve. A "consumer" is one who seeks or acquires by purchase or lease any goods or services. TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). "Services" is defined as work, labor, or services purchased or leased for use, including services furnished in connection with the sale or repair of goods. *Id.* § 17.45(2). "Goods" means tangible chattels or real property purchased or leased for use. *Id.* § 17.45(1). In this case the legatees were consumers who acquired by purchase the services of Coble Wall.[2]

█ The jury answered affirmatively another question, finding that Coble Wall, through Cluck, represented that the **estate plan** had characteristics or benefits which it did not have. A consumer purchases either goods or services. However, it is clear that the estate plan itself cannot be **goods,** that is, a tangible chattel such as an automobile. Moreover, the estate plan itself cannot be **services;** these are provided by the one who devises and implements the estate plan. In this case there was the separate and distinct finding by the jury that the services of Coble Wall (through Cluck) in implementing the estate plan did not involve deceptive practices as required by the DTPA. That determination in the DTPA action necessarily controls.

The estate plan was designed primarily to save taxes. It is undisputed that it failed to save the stated amount of estimated taxes based on the appraiser's valuation of the land at over eight million dollars, which might be construed as having "characteristics or benefits it did not possess".

On the other hand, in successive questions as to each plaintiff, the jury found there was a zero "loss of estate assets as a result of the estate plan in question." In other words, the jury found that the plaintiffs did not lose the Bandera property and lesser estate assets as a result of the estate plan (failure to prove causation as argued in point of error 53). The jury further answered zero as to "tax savings that were represented, if any, to have been a result of the estate plan in question" as to each of the plaintiffs.

These negative findings by the jury nullified the DTPA cause of action. Therefore, any recovery of damages based on this claim would be precluded.

## Fiduciary Duty

█ We have reviewed our previous disposition of certain other points of error, specifically forty-two and forty-three regarding fiduciary duty. While we conclude that Coble Wall did have a fiduciary duty to the legatees, we agree with Coble Wall (or Cluck) that the fiduciary duty was not breached as found by the jury.

Fiduciary duty was defined for the jury as:

> a duty of integrity, and loyalty, and the utmost good faith. An individual or entity with a fiduciary duty is measured by high and strict ethical standards, and not by the standards and dealings between ordinary parties[,] ... has a duty to deal openly, and to make full disclosure to the beneficiary of the material details of any transaction and must also disclose any benefit which he receives in connection with a transaction involving the estate.

We agree there is no evidence to support the affirmative finding of a breach and the ensuing damages caused thereby. Appellants preserved the assignment of error in the motion for judgment notwithstanding the verdict and motion for new trial.

Although the present independent administrator testified to what the fees might have been had there been no estate plan, and they may well have been less, that

---

**2.** The jury found that Coble Wall was the alter ego of Cluck.

estimation of possible lower fees is no evidence of breach of fiduciary duty. We find no evidence in the record of Coble Wall's failure to deal openly or make full disclosure to the plaintiffs and their attorneys, as noted previously, as to all facets of the estate plan. There is no evidence that plaintiffs were coerced into agreeing to the plan, nor evidence of malfeasance by the guardian. In fact, the estate plan was revised and corrected according to the desires of the plaintiffs with constant legal assistance from their attorneys during the period from April to November, 1985, resulting in appearances in court by plaintiffs and their full approval before the plan was ordered implemented by the probate court. The plan went into effect with the board of directors of the Moore estate corporation (plaintiffs' attorneys were members) approving the action of the guardian as to all cash distributions and substantial fees paid to plaintiffs' attorneys, CPA, and appraisers. Then the guardian, according to the court-approved, board-approved, and legatees-approved plan, sold the mortgage bonds to SASA. The legatees accepted the benefits.

Further, there is no evidence that the guardian breached a fiduciary duty by implementing a so-called "guise" (the estate plan) designed to circumvent the homestead laws as contended by plaintiffs at trial. That contention was rejected in the *SASA* case, 780 S.W.2d 803, when the transaction and sale were held to be valid. We note that the *SASA* opinion had been published before the trial of the present case.

At trial the plaintiffs also described the estate plan as a "sham", and indicated the IRS considered it to be that. However, simply because the IRS collected a sum of estate taxes based on a lower valuation of the land, similar to Coble Wall's first valuation, does not constitute proof of breach of fiduciary duty by the guardian. Paradoxically, as set out before, the plaintiffs through their present administrator, valued the same land at over seven million dollars when they sold it to River City for that amount in May, 1986, after they removed Coble Wall. Moreover, there is no evidence

nor any inference from the evidence that Coble Wall, through Cluck, collaborated with the appraisers to present a false appraisal, nor were those appraisers sued by plaintiffs.

In reviewing a no evidence contention, we consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying that standard, we hold there is no evidence to support the answer to question one, that Coble Wall (Cluck) breached a fiduciary duty to plaintiffs in administering the Moore estate, or to question two, that a breach proximately caused damages. Points of error forty-two and forty-three are sustained.

The first twenty points of error deal with trial rulings on special exceptions, motion for continuance, trial amendment, and the like. We discussed those fully and overruled points one through twenty in our previous opinion and so rule again.

Because of our disposition of the case, it is not necessary that we address the other points of error which pertain to requested jury instructions and objections to jury instructions and sufficiency questions.

The trial court's judgment is reversed and judgment is rendered that plaintiffs take nothing.