**Hector Canales RODRIGUEZ d/b/a Cowboy Transport, Appellant,**

v.

**Jose VILLARREAL, Appellee.**

No. 14–08–00826–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 3, 2010.

Warren W. Harris, Houston, for appellant.

Vuk S. Vujasinovic, John C. Schwambach, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Hector Canales Rodriguez d/b/a Cowboy Transport appeals the portion of a judgment awarding exemplary damages to appellee, Jose Villarreal. In two issues, Rodriguez contends the trial court erred by failing to apply the statutory exemplary-damages cap when rendering judgment on the jury's verdict. Villarreal has filed a motion to dismiss the appeal and award sanctions, contending Rodriguez waived his right to appeal. We ordered the motion taken with the case. Because we agree the trial court erred by failing to apply the statutory exemplary-damages cap, we modify the judgment and affirm as modified. Because we conclude Rodriguez did not waive his right to pursue this appeal, we deny Villarreal's motion to dismiss and for sanctions.

## I. BACKGROUND

Villarreal sued Rodriguez for injuries sustained in a vehicle accident. During trial, the parties entered into what they characterized as a "high/low agreement." They orally announced the agreement on the record as follows.

THE COURT: Are we ready to go forward or—

[RODRIGUEZ'S COUNSEL]: We need to make a record. Judge, defense counsel and [Villarreal's] counsel would like to announce an agreement of a high/low agreement in this case—

THE COURT: Okay.

[RODRIGUEZ'S COUNSEL]: —with the guaranteed recovery of [Villarreal] a minimal of a hundred thousand, maximum of 750,000. We will proceed forward and let the jury render a verdict and if the verdict comes in between 100 and 750, it will be the verdict.

[VILLARREAL'S COUNSEL]: We agree each party waives right to appeal.

[RODRIGUEZ'S COUNSEL]: Fine, yes. So agreed.

THE COURT: Okay. I am not—and so if the jury returns a verdict that is within your high/low, that's the verdict?

[VILLARREAL'S COUNSEL]: Right.

THE COURT: If it is outside on either side, your high/low agreement controls; is that right?

[RODRIGUEZ'S COUNSEL]: Correct. Correct. It's a Rule 11 agreement for maximum and minimum.

THE COURT: Okay. All right. Okay.[1]

A jury found that Rodriguez's negligence proximately caused the accident and assessed $112,109 in compensatory damages, which consisted of $108,109 in economic damages and $4,000 in non-economic damages. The jury also found that Rodriguez was grossly negligent and assessed $550,000 in exemplary damages.

Subsequently, Villarreal filed a "Motion to Enforce Rule 11 Settlement Agreement and for Attorney's Fees and Sanctions," and both parties filed a motion for judgment. In essence, Villarreal asserted that the parties' agreement required rendition of judgment for the full amount of compensatory and exemplary damages assessed by the jury. In contrast, Rodriguez argued that the agreement did not preclude application of the statutory exemplary-damages cap, which would mandate judgment for $220,218 in exemplary damages, as opposed to the $550,000 assessed by the jury. *See* Tex. Civ. Prac. & Rem.Code

Ann. § 41.008(b) (Vernon Supp. 2009) ("Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000").

On June 3, 2008, the trial court signed a judgment, reflecting the court interpreted the agreement as asserted by Villarreal and awarding him $112,109 in compensatory damages, $550,000 in exemplary damages, costs of court, and pre-judgment and post-judgment interest. Rodriguez timely filed a motion to modify the judgment, re-urging his contention that the exemplary-damages cap must be applied. The trial court denied the motion by written order.

## II. ANALYSIS

In his first issue, Rodriguez advances two somewhat interrelated reasons that the trial court erred by failing to apply the statutory exemplary-damages cap: (1) the high-low agreement was inapplicable because the conditions precedent were not triggered; or (2) even if the high-low agreement were applicable, the trial court incorrectly interpreted it. Rodriguez's second issue is an alternative contention; he argues that, even if the high-low agreement were applicable, the trial court erred by refusing to apply the exemplary-damages cap because it can be waived only by express agreement. Villarreal contends that, not only did the trial court correctly interpret the parties' agreement and refuse to apply the exemplary-damages cap,

---

1. We recognize Villarreal's attorney did not expressly state that he agreed with each recitation by Rodriguez's counsel, and the trial court's questions regarding the announcement were not each answered by both counsel. Nonetheless, the parties do not dispute the entire announcement constituted their Rule 11 agreement. *See* Tex.R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). Rather, as we will discuss, the dispute involves interpretation of the agreement.

but Rodriguez waived his right to appeal the trial court's judgment. Therefore, Villarreal requests that we dismiss the appeal and assess sanctions against Rodriguez.

## A. The Parties' Agreement

■ With respect to his first issue, Rodriguez contends the high-low agreement would be triggered only if the verdict fell outside its limits; i.e., if the verdict were less than $100,000, Villarreal was entitled to recover $100,000, and if the verdict were greater than $750,000, Villarreal's recovery was limited to $750,000. Rodriguez contends the high-low agreement was inapplicable if a verdict fell between these amounts; thus the trial court was required to render judgment on the verdict by applying all legal concepts, including the exemplary-damages cap, that are ordinarily applicable when rendering judgment on a jury verdict.

■ A "high-low agreement" is "[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial." BLACK'S LAW DICTIONARY 746 (8th ed. 2004); *see Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 344 n. 1 (Tex.App.-Houston [14th Dist] 2008, pet. denied) (citing above Black's Law Dictionary definition). A settlement agreement, including a high-low agreement, is a contract, and its construction is governed by legal principles applicable to contracts generally. *Employers Reinsurance Corp. v. Gordon*, 209 S.W.3d 913, 917 (Tex.App.-Texarkana 2006, no pet.); *ASI Techs., Inc, v. Johnson Equip. Co.*, 75 S.W.3d 545, 547 (Tex.App.-San Antonio 2002, pet. denied). If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we construe it as a matter of law. *See Am.*

*Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003).

Initially, we agree with Rodriguez's contention that the high-low agreement was never triggered. The parties' recitations, particularly the following response to the trial court's question, made clear that the high-low agreement controlled only if the verdict fell outside its limits:

THE COURT: If it is outside on either side, your high/low agreement controls; is that right?

[RODRIGUEZ'S COUNSEL]: Correct. Correct. It's a Rule 11 agreement for maximum and minimum.

Moreover, as a sister-state court recognized in a case cited by Rodriguez,

A high-low agreement, when initially reached by the parties in a litigation, is, in fact, a conditional settlement. The condition of the agreement is that the jury render a verdict that falls outside the range of the high-low agreement. When a verdict is rendered outside of the agreed-upon range, the condition is triggered and the "high" or the "low" becomes binding upon the parties as a settlement. By contrast, when a jury renders a verdict within the range of the high-low agreement, *the condition is not met and the high-low agreement is rendered academic.*

*Cunha v. Shapiro*, 42 A.D.3d 95, 837 N.Y.S.2d 160, 163 (N.Y.App.Div.2007) (emphasis added).

Villarreal frames his contention as an argument that the high-low agreement applied even if the verdict fell between $100,000 and $750,000 and Rodriguez agreed to pay the amount of any such verdict. However, the high-low agreement was clearly inapplicable to a verdict between its dollar limits considering the nature and purpose of such an agreement. *See id.;* BLACK'S LAW DICTIONARY 746. Nevertheless, Villarreal repeatedly sug-

gests that the parties reached a "settlement agreement" for payment of such a verdict. Consequently, the dispute is actually whether the parties' overall Rule 11 agreement contained not only a high-low agreement but also an agreement that Rodriguez would pay the amount of any verdict between $100,000 and $750,000.

We disagree that the parties made an agreement that Rodriguez would pay the amount of any verdict between $100,000 and $750,000. The parties represented at both the outset and conclusion of their announcement that they were dictating a "high-low" agreement. They did not represent that they made any sort of compromise settlement relative to a verdict between the limits of the high-low agreement. The only language in their announcement relative to such a verdict was the following:

> [RODRIGUEZ'S COUNSEL]: —with the guaranteed recovery of [Villarreal] a minimal of a hundred thousand, maximum of 750,000. *We will proceed forward and let the jury render a verdict and if the verdict comes in between 100 and 750, it will be the verdict.*
>
> . . .
>
> THE COURT: Okay. I am not—and so if the jury returns a verdict that is within your high/low, *that's the verdict?*
> [VILLARREAL'S COUNSEL]: Right.

(emphasis added).

In his brief, Villarreal summarizes the above-cited statement by Rodriguez's counsel as follows: "[W]e will proceed forward and let the jury render a verdict and if the verdict comes in between 100 and 750, it [the guaranteed recovery] will be the verdict." Therefore, Villarreal contends that the word "it" in Rodriguez's counsel's statement referred to "the guaranteed recovery," reflecting the parties agreed that the guaranteed recovery would be the amount of the verdict. We

disagree. The only noun preceding "it" in this statement, to which "it" could have referred, was the word "verdict." Accordingly, the parties merely stated that the verdict will be just that—"the verdict."

■ Further, the trial court's above-cited question and the answer thereto confirmed the parties did not agree that "the guaranteed recovery" will be "the verdict." When the trial court asked, "a verdict that is within your high/low, that's the verdict?," Villarreal's counsel acquiesced in the trial court's summary and did not impose language ensuring "the guaranteed recovery" will be the amount of the verdict. We are not authorized to rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex.1996).

Moreover, as Rodriguez asserts, the parties did not state that a verdict between $100,000 and $750,000 will be "the amount Rodriguez will pay," "the judgment," "the recovery," or similar words to that effect. Villarreal offers no authority demonstrating a defendant's agreement that a certain amount constitutes a "verdict" translates into the defendant's "guarantee" to pay that amount to the plaintiff. To the contrary, the term "verdict" does not entail a guarantee that a party will recover the amount of damages found by the jury. A "verdict" is "a written declaration by a jury of its decision, comprehending the whole or all the issues submitted to the jury. . . ." Tex.R. Civ. P. 290. Although a trial court must generally render judgment on a verdict, Tex.R. Civ. P. 300, the judgment "shall be so framed as to give the party all the relief *to which he may be entitled either in law or equity.*" Tex.R. Civ. P. 301 (emphasis added); *see* Black's Law Dictionary 858 (8th ed. 2004) (defin-

ing "judgment" as a "court's final determination of the rights and obligations of the parties in a case.").

Consistent with this requirement, there are various legal principles, in addition to the exemplary-damages cap, that may apply when a trial court renders judgment on a verdict and cause the ultimate recovery to be less, or even more, than the total damages found by the jury. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 33.012(a) (Vernon 2008) (providing that, relative to certain causes of action, trial court shall reduce amount of damages to be recovered by claimant by a percentage equal to his percentage of responsibility); *id.* § 33.012(b) (requiring trial court, when this provision is applicable, to reduce claimant's recovery of damages by sum of all his settlements in the cause of action); Tex. Civ. Prac. & Rem.Code Ann. § 74.301 (Vernon 2005) (prescribing certain limits on damages recoverable in health-care liability suits); Tex. Fin.Code Ann. § 304.102 (Vernon 2006) ("A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest."). In fact, Villarreal maintained he was entitled to, and indeed was awarded, pre-judgment interest although such award caused an ultimate recovery greater than the "verdict." Accordingly, Rodriguez's agreement that a verdict between $100,000 and $750,000 "will be the verdict" did not constitute an agreement that Villarreal is entitled to recover the amount of that verdict.

Villarreal also emphasizes the general concepts that a high-low agreement is considered a complete settlement, and Texas law favors enforcement of agreements between parties. *See In re BP Prods. N. Am. Inc.,* 244 S.W.3d 840, 846 (Tex.2008). However, Rodriguez does not quarrel with these general principles. Rather, as Rodriguez correctly suggests, they are inapplicable here because the high-low agree-

ment was not triggered, and there was no settlement agreement relative to a verdict between the limits of the high-low agreement. Instead, relative to any such verdict, the parties effectively recited that they would remain in the same positions they would have occupied if there had been no Rule 11 agreement.

 Additionally, Villarreal raises two estoppel arguments. First, he cites the doctrine of estoppel by election, which has been recognized as the principle that a person will not be permitted to accept the beneficial part of a transaction and repudiate the disadvantageous part. *See San Antonio Sav. Ass'n v. Palmer,* 780 S.W.2d 803, 809 (Tex.App.-San Antonio 1989, writ denied). Villarreal suggests that this doctrine precludes Rodriguez from accepting the benefit of a high-low agreement, which limited his exposure if the verdict exceeded $750,000, but repudiating a purportedly concomitant agreement to pay the amount of a verdict between $100,000 and $750,000. However, the disadvantageous part of the high-low agreement to Rodriguez was the requirement that he pay $100,000 even if the verdict were less than this amount. Again, because Rodriguez made no agreement to pay a verdict between the limits of the high-low agreement, he does not seek to repudiate a disadvantageous portion of the agreement by requesting application of the exemplary-damages cap.

 Next, Villarreal asserts the principle of quasi-estoppel, which precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex.2000). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced or from which he accepted a benefit. *Id.* However, be-

cause Rodriguez never agreed to pay the amount of any verdict between $100,000 and $750,000, he does not take an inconsistent position by insisting on application of the exemplary-damages cap before rendition of judgment on such a verdict.

Finally, Villarreal posits that Rodriguez waived application of the exemplary-damages cap by failing to expressly reserve this right when making the Rule 11 agreement. Villarreal relies on *ASI Technologies,* a products-liability case, in which the defendant seller and the defendant manufacturer entered into a high-low agreement with the plaintiff, specifying minimum and maximum recoveries. 75 S.W.3d at 546–47. The defendants then entered into a separate agreement whereby they apportioned between themselves the amount each would pay under the high-low agreement with the plaintiff. *Id.* at 547. The jury returned a verdict that exceeded the maximum limit of the high-low agreement, thus limiting the plaintiff's recovery to that amount. *Id.* The jury also found the manufacturer was liable to the plaintiff but found no liability on the part of the seller. *Id.* The seller sought statutory indemnity from the manufacturer pursuant to section 82.002 of the Texas Civil Practice and Remedies Code for the amount the seller paid pursuant to the high-low agreement, plus its attorney's fees, court costs, and pre-judgment interest. *Id.* at 547–48; *see* Tex. Civ. Prac. & Rem.Code Ann. § 82.002(a), (b) (Vernon 2005) (providing, in general, that manufacturer shall indemnify and hold harmless seller against loss arising out of a products-liability action, except for any loss caused by the seller's conduct and defining "loss" to include court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages).

On appeal, the court held that, although the verdict-sharing agreement was silent with respect to statutory indemnity under section 82.002, the seller intentionally waived such a right because enforcing the statute would render the agreement meaningless. *ASI Techs.,* 75 S.W.3d at 549. The court also noted that the seller could have easily included a provision in the verdict-sharing agreement whereby it reserved its right to statutory indemnity if it had so chosen. *Id.*

*ASI Technologies* is distinguishable from the present case because its defendants agreed to each *pay* a certain amount of the plaintiff's recovery; thus, the statutory indemnity sought by the seller would have directly altered their agreement by effectively causing the manufacturer to pay the entire recovery. *See id.* at 547–49. Once again, in the present case, the parties did not enter into an agreement that Rodriguez would *pay* a verdict which fell between the limits of the high-low agreement. Therefore, application of the exemplary-damages cap to such a verdict would not render meaningless any agreement of the parties. Consequently, Rodriguez did not waive his right to request application of the exemplary-damages cap by entering into the Rule 11 agreement.

Further, because the parties made no settlement agreement relative to such a verdict, Rodriguez was not required to reserve his right to later request application of any legal concepts ordinarily applicable to rendering judgment on a verdict. Rodriguez had already pleaded for application of the exemplary-damages cap and then reiterated his request after the jury returned the verdict.

In sum, the trial court misinterpreted the Rule 11 agreement by deciding it included a settlement agreement for payment of the amount of any verdict between $100,000 and $750,000. Accordingly, the trial court erred by refusing to apply the exemplary-damages cap when rendering

judgment on the verdict, as requested in Rodriguez's motion to enter judgment.

## B. Right to Appeal

 However, our inquiry does not end here because Villarreal contends that Rodriguez waived his right to pursue this appeal. Villarreal emphasizes the general principle that the right to appellate review may be waived by agreement. *See In re Long,* 946 S.W.2d 97, 99 (Tex.App.-Texarkana 1997, no writ) (citing *Johnson v. Halley,* 8 Tex.Civ.App. 137, 27 S.W. 750 (1894, writ ref'd)). Again, Rodriguez does not disagree with this general concept. However, as he suggests, we must determine the scope of the waiver.

Although the parties stated, "[w]e agree each party waives right to appeal," it is unclear whether they waived the right to appeal only a verdict subject to the high-low agreement or any verdict. Arguably, the waiver applied to only a verdict subject to the high-low agreement because the parties made clear they were making only a high-low agreement. Nevertheless, even if the waiver also applied to a verdict between the limits of the high-low agreement, the parties waived, at most, the right to appeal the "verdict" and not the right to appeal a judgment improperly rendered after the verdict.

 Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003) (per curiam). In determining if a waiver has in fact occurred, the court must examine the acts, words, or conduct of the parties, and it must be "unequivocally manifested" that it is the intent of the party to no longer assert the right. *Dep't of Protective and Regulatory Servcs. v. Schutz,* 101 S.W.3d 512, 516 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (applying this rule when determining whether party waived right to appeal). In the present case, the entire agreement of the parties, in which waiver of the "right to appeal" was contained, concerned the consequences of a "verdict." *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994) (recognizing that court must read all parts of a contract together to ascertain the parties' agreement, and "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions."). The parties did not manifest an intent to relinquish the right to appeal the judgment in all circumstances.

We construe waiver of the right to appeal the verdict as relinquishing the right to raise issues which might vitiate the verdict such as challenges to sufficiency of the evidence to support the verdict, evidentiary rulings, or jury-charge errors. However, as Rodriguez asserts, construing the waiver as applying to any judgment rendered in this case could lead to an absurd result. *See Lane v. Travelers Indem. Co.,* 391 S.W.2d 399, 402 (Tex.1965) (refusing to construe contract in a manner that would produce absurd result); *Pavecon, Inc. v. R–Com, Inc.,* 159 S.W.3d 219, 222 (Tex.App.-Fort Worth 2005, no pet.) (recognizing that, when possible, court will avoid a construction of contract which would lead to absurd result). For example, under Villarreal's interpretation, the parties would have no recourse if the trial court rendered judgment for an arbitrary sum that was completely unrelated to the verdict or if the verdict had been subject to the high-low agreement, but the trial court rendered a judgment which failed to comport with the minimum or maximum recoveries. We recognize these scenarios were unlikely, but we cite them as examples of the reason that waiver of the right to appeal the verdict cannot translate to

waiver of the right to appeal improper rendition of judgment on the verdict.

We note that a federal court has implicitly reached the same conclusion with respect to a similar waiver provision. In *Vargo v. Mangus*, 94 Fed.Appx. 941, 942 (3rd Cir.2004), the parties entered into a high-low agreement. Unlike the present case, the parties explicitly agreed that a verdict between the limits of the high-low agreement "will be the amount paid." *See id.* After the jury returned a verdict between the limits of the agreement, the trial court rendered judgment for that amount and also granted the plaintiff's request for additional "delay damages." *Id.* The court of appeals held that delay damages were improper because the parties' agreement constituted a settlement for the amount of the verdict only, and the plaintiffs failed to reserve the right to seek delay damages. *Id.* at 943. Notably, like the present case, the agreement also contained a waiver of the right to appeal. *Id.* at 942. Although the court did not discuss any issues regarding the right to appeal, it expressly noted that the defendants were appealing the award of delay damages and not the jury's verdict. *Id.* at 942–43 & n. 1. Consequently, because the court considered the merits of the appeal, it obviously believed the waiver did not apply to appeal of the trial court's improper rendition of judgment on the verdict in violation of the parties' agreement, as opposed to an appeal of the verdict itself. *See id.*

Villarreal primarily relies on *In re Long,* in which the court dismissed an appeal based on a waiver provision in the parties' settlement agreement. 946 S.W.2d at 100. *In re Long* is not persuasive here because the provision in that case was much more specific than the language at issue in the present case. *See id.* at 98. The *In re Long* parties agreed to waive all rights to appeal from "any existing order," which included the order of turnover from which the appeal was taken. *Id.* In contrast, the parties in the present case did not waive their right to appeal from "any judgment." Accordingly, we conclude that Rodriguez did not waive his right to appeal the trial court's failure to apply the statutory exemplary-damages cap when rendering judgment on the jury's verdict.

In sum, we sustain Rodriguez's first issue, and we need not consider his second issue. We modify the judgment to reduce the award of exemplary damages from $550,000 to $220,218 and affirm the judgment as modified. We deny Villarreal's motion to dismiss and for sanctions.